# O'Conner *against* Forster.

In an action for a breach of a contract to carry wheat from Pittsburgh to Philadelphia, the difference between the value of the wheat at Pittsburgh, with the freight added, and the market price at Philadelphia, at the time it would have arrived there, if carried according to contract, is the measure of damages.

ERROR to the district court of *Allegheny* county.

This was an action on the case, by J. and E. Forster against O'Conner and others, to recover damages against the defendants, as common carriers, for refusing to transport from Pittsburgh to Philadelphia, a quantity of wheat according to contract. The verdict and judgment in the court below were in favour of the plaintiffs, and the defendants excepted to the charge of the court, and brought this writ of error.

The defendants, trading under the firm of the Pittsburgh Transportation Line, contracted with the plaintiffs to transport from Pittsburgh to Philadelphia, one thousand bushels of wheat, to be delivered to them by the plaintiffs, on or before the 10th day of November 1837, and to be delivered to a certain Isaiah Bell, in Philadelphia, who had purchased it from the plaintiffs. The wheat was delivered to the defendants on the morning of the 10th of November, ready for transportation—but they refused to receive it. The evidence showed that Bell had purchased the wheat of the plaintiffs, for one dollar and 65 cents per bushel, on the faith of its delivery to him in Philadelphia by the plaintiffs. Bell, in the same manner, had sold it to Chile & Barnett, of Philadelphia, for one dollar and 80 cents per

bushel, to be delivered before the canal closed.  Owing to the non-arrival of the wheat according to contract, the price of it falling in the mean time, Bell, in order to indemnify himself, retained in his hands the proceeds of a former sale to him by the plaintiffs.  Bell stated in evidence, that had the wheat arrived in ·Philadelphia in due course of transportation after the 10th of November, it would have brought 2 dollars and 10 cents per bushel.  Another witness stated, that in the fall of 1837, the plaintiffs contracted to deliver to him in Philadelphia 1500 bushels of wheat, at 1 dollar and 12½ cents per bushel.  The price of wheat in November 1837 in Pittsburgh was shown to have been 1 dollar and 15 cents, 1 dollar and 20 cents, and 1 dollar and 10 cents.  The freight agreed on was 45 cents.

The court below charged the jury as follows:

*Grier*, president.—" If the jury believe the contract, as stated by the witness Isaiah Bell, that the defendants agreed to carry 1000 bushels of wheat, if delivered on or before the 10th of November, and that plaintiffs were ready to deliver the wheat on that day, and defendants refused to receive and carry it according to their contract, the plaintiffs will be entitled to recover from defendants such damages as were the ' necessary consequences' of their breach of their contract.

" What should be the proper measure of the damages in this case, has been a matter of some dispute and considerable difficulty in the mind of the court.

" The only case which I find 'in point,' on this subject, is Bracket *v.* McNair, 14 *Johns.* 170—which makes the measure of damages the difference between the value of the articles to be carried, at the place of their intended embarkation, and their value at the place of intended delivery—minus the carriage and necessary expenses. In that case, by the refusal and neglect of the carrier to take the goods at the time agreed, the opportunity of the transportation was altogether lost by the intervention of the embargo or non-intervention act.  In this case it is contended that the measure of damages should be the difference between the price agreed upon, and that for which their carriage might have been obtained by others; and this would be true if such was the case here.  The plaintiff would have no right by his own negligence or want of care, to incur a voluntary loss for the purpose of imposing it on defendants, as a penalty for their breach of contract.  If, as is usually the case here, another conveyance could have been obtained for this wheat before the canal froze up, by a little extra expense and the delay of a day or two, he would have no right to claim greater damages than would have been incurred by such extra expenses and delay.  But have you any evidence, that the plaintiff could have got his wheat transported at any reasonable price that fall at all?  It is evident from the testimony in the case, and well known facts in the history of our transportation on this canal, that there is a great uncertainty

[O'Conner v. Forster.]

as to the time the canal freezes up; sometimes the navigation is stopped by the middle of November, and even before it; and if a carrier agrees to deliver goods within a certain number of days, and fails to do it through the freezing of the canal, he has either to transport them in wagons at a great expense, or keep them all winter at a great risk to themselves, &c. &c., and of damages for their non-delivery in time. Hence we see the reason—why these parties consider the delay of delivery to the carrier here so important, and why the defendants refused to accept and carry them according to their contract—but offered to carry if the plaintiffs would risk the freezing of the canal. There is no pretence that the defendants had not boats, or the means of carriage on the canal on the 10th, and for several days after, if they had chose to run the risk consequent upon their contract; most probably, therefore, their refusal to accept the goods originated from the prospects of an early winter, and the probability that they would incur great risk of loss, from having their boats frozen up in the canal. If this were the case, that these carriers chose to take the consequences of a breach of their contract, rather than run the risk consequent on a compliance with it, is it probable that the plaintiffs would have got other carriers to undertake it for any reasonable advance on the price agreed to be given to defendants? If their refusal to carry did not arise from their inability to perform the contract, but their unwillingness to run the risk, why should they ask you to presume that others could be found less prudent than themselves, who would undertake the job for any usual compensation? At least as they have not shown that the plaintiff might have got them transported by others, for a small or reasonable advance of compensation— they ought not to ask you to presume the fact, which their own conduct shows to be improbable. The plaintiff was not bound to ship the wheat till spring, and lie out of his capital—and to have sent it by wagons would have made the damages worse. If such be your views of the facts, this case would then be within the category of the one just stated, where the embargo hindered the goods from being transported—and the measure of damages should be the loss sustained by plaintiff—by not having the goods delivered in Philadelphia. The value of wheat here on the 10th of November 1837, was one dollar and 15 cents per bushel; add carriage to Philadelphia, 45 cents—his wheat would have cost him in Philadelphia, one dollar and 60 cents—by his contract with Bell, he was to receive one dollar and 65 cents; here then would be five cents a bushel direct loss to himself; and if you believe he had made a binding contract with Bell, he would be liable to Bell for damages for what the wheat would have sold for—He had sold to another for one dollar and 80 cents. His fair claim then to damages on plaintiff would be at least 15 cents—whether more we have no evidence. If you believe this to be the case then 20 cents a bushel would be the measure of damages in this case. This is the most

[O'Connor v. Forster.]

probable view of the case for defendants—for if we take the market value at Philadelphia, as the criterion, (which probably might be done,) it makes the damages fifty cents a bushel—as to interest it is a matter within your discretion; it does not follow necessarily that interest be calculated on unliquidated damages—at least before suit brought; as defendant may not be supposed to show what plaintiffs' claim justly is."

The plaintiff in error assigned the following errors:—

1. The court erred in instructing the jury, that the measure of damages was the difference between the value of the wheat here, (in Pittsburgh,) adding the freight, and the value in Philadelphia.

2. There was error in charging the jury, that the rule for damages was not the difference between the price of freight agreed upon, and that for which the wheat might have been carried by others.

*M'Candless*, for plaintiffs in error, contended, that the court below erred in their charge to the jury. It is to be presumed the plaintiff could have procured the transportation of his wheat by other persons, and unless he shows he could not, his damages were only nominal. If he can go beyond that, yet the price at the market of delivery is too uncertain and fluctuating to furnish a just standard. If goods are damaged or lost, the value at the point of delivery may be the measure of damages, but not for the failure of transportation. Here there was no evidence, that the plaintiffs had actually sustained damage, or that Bell had ever paid them for breach of contract. He cited 2 *Conn. Rep.* 485; 6 *Watts* 424; 3 *Wash. C. C.* 194. The damages given were speculative.

*Findlay*, for defendants in error, argued, that the court below were right. The price at Philadelphia, which Bell had agreed to pay to the plaintiff, so far as it exceeded the value of the wheat at Pittsburgh and the freight, was a clear loss to the plaintiff. Indeed we contended below, that the market price at Philadelphia was two dollars and 10 cents per bushel, and that we ought to be allowed at that rate. He cited Bracket *v.* M'Nair, 14 *Johns.* 170, as in point.

The opinion of the court was delivered by

SERGEANT, J.—The defendants were bound by their contract to transport the wheat from Pittsburgh to Philadelphia, and have shown no legal excuse for refusing to do so. The question is, what is the measure of damages to be paid by a carrier for violating such a contract? The defendants contend, that the damages should be merely nominal, unless the plaintiffs show that they could not get the wheat carried by some other person. But we think it is the duty of the defendants to do this if practicable, and not of the plaintiffs. Then as the defendants have not fulfilled their engage-

X.—2 L*

ment, the next thing he ought to do, is to place the plaintiffs in the same situation as if they had fulfilled it. They ought to be indemnified. The wheat was a consumable article of merchandize, at its port of destination, calculated for sale in the market there, where the price fluctuates from day to day, and sometimes from hour to hour. The market value of the article there, at the time it would probably have arrived and been ready for sale, is what it would have been worth to the plaintiffs, and the difference between that and the value at the place of shipment, added to the cost of freight, is the amount of loss which the plaintiffs have sustained. In Bracket *v.* M'Nair, 14 *Johns.* 170, this rule was recognized. It was an action for a breach of contract to transport salt from A to B, and it appeared that other vessels sailed, and there was no reason why the plaintiff's salt was not carried at the time agreed on; the difference between the value of the salt at A, and its increased value at B, was deemed the proper measure of damages. This rule seems to be fair and reasonable, and the only one by which justice can be done between the parties. There is no reason why carriers who engage with merchants to transport merchandize, should not be held to a strict performance of their engagements, and that is to be done by obliging them to indemnify the shippers fully. Here, it would seem, the market price in Philadelphia was two dollars and six cents per bushel; but the jury were permitted to give less, if they believed the plaintiffs' vendee had sold the wheat at one dollar and 80 cents, and of this direction the defendants had no cause to complain.

Judgment affirmed.