## KENT *vs.* THE HUDSON RIVER RAIL ROAD COMPANY.

A judgment recovered in another court, by the defendant, in a former suit commenced by the plaintiff's agent, for the same cause of action for which a second suit is brought, is a bar to the plaintiff's claim, unless it appears that the former suit was commenced and prosecuted without the plaintiff's authority.

It is also a bar though the former suit was commenced without authority, if the plaintiff has since ratified the agent's authority.

In an action against common carriers, to recover damages resulting from a delay in transporting sheep to market, within the time agreed, any loss sustained by the plaintiff by a fall in the market between the times when the sheep should have arrived, and when they did arrive, is a proper element of damages, to be taken into account by the jury, in connection with other facts and circumstances.

Whether the carriers are bound, as upon an express contract, to deliver property on a particular day, or to deliver it without unnecessary delay, makes no difference; inasmuch as the carriers' duty rests upon contract implied in law. They are bound to transport and deliver the goods within a reasonable time.

MOTION by the defendants for a new trial, upon a case. The action was commenced against the defendants as common carriers, and the complaint contained three counts. 1. For

injuries resulting from a delay in transporting over the defendants' rail road from Albany to New York, eighty sheep, by which delay the sheep were injured and the plaintiff sustained damage by a decline in the market. 2. For damages by reason of unreasonable delay in the transportation of 182 sheep pelts from New York to Albany, by reason of which delay the pelts heated, rotted and were rendered valueless. 3. For delay in the transportation of 71 sheep pelts from New York to Albany, by which delay they were also heated and rendered valueless. The defendants pleaded the general issue, and secondly, to the first count also pleaded that in March, 1853, the plaintiff commenced an action in a justice's court in the city of New York for the same cause of action, to wit, the injury to the 80 sheep, by reason of the delay in transporting them, which action was tried upon the merits, and a judgment rendered for the defendants. The cause was tried at the Ontario circuit in May, 1855, and a verdict rendered for the plaintiff for $507.03.

*H. O. Chesebro*, for the defendants. I. The judgment in the former suit is a bar. The testimony of Taylor shows that he was the general agent of the plaintiff in the transaction of his business. If Taylor had no direct instructions from the plaintiff to commence the suit, the subsequent ratification of his acts by the plaintiff binds him, the same as though he had instructed him to commence it. (1.) The subsequent assent of a principal will confirm the authorized acts of an agent, so that he will be bound by them in respect to third persons. (*Dunlap's Paley on Agency, n. o*, 171. 1 *Liv. Prin. and Agency*, 391.) (2.) When the principal is informed of what has been done, he must dissent and give notice of it within a reasonable time; if he does not, his assent and ratification will be presumed. (2 *Kent's Com.* (*marg.*) 617. *Id.* 614, *n.* 1. *Benedict* v. *Smith*, 10 *Paige*, 126. *Story on Agency*, §§ 254–6, *and authorities cited. Armstrong* v. *Gilchrist*, 2 *John. Cas.* 423.) The plaintiff being advised of the judgment against him, was bound immediately, or within a reasonable time, to have disaffirmed the acts of his agent in the institution of the suit. Having omitted to do so, the

judgment stands upon the record in a court having competent jurisdiction of the subject matter, conclusive upon the matters involved in it.

II. Was the decline in the market price of the sheep, a proper measure of damages? (1.) When a common carrier receives property to transport, and no contract is made to deliver by a particular time, the law imposes the obligation to deliver in a reasonable time. If there is an actual delivery of the property, the carrier's liability is the same as that of ordinary bailees for hire. (1 *Parsons on Con.* 659.) (2.) The rule is well settled that a wrongdoer is responsible only for the proximate and not for the remote consequences of his acts. Those circumstances must be such as might have been foreseen and expected as the results of his conduct; not those which he could not have foreseen, and was therefore under no obligation to take into his consideration. The damages resulting from his acts, or failure to perform, must be such as it is apparent the parties had in contemplation at the time the contract was made. (2 *Parsons on Cont.* 454, *pt.* 2, *ch.* 7, § 5. *Sedg. on Dam.* 112, *2d ed.*) They must be the natural and proximate consequence of the act complained of. (2 *Greenl. Ev.* §§ 253–7.)

III. The decline in the market price of sheep was not a proper measure of damages. It was too remote and contingent to constitute a proper element of damages. (*Astley* v. *Harrison,* 1 *Esp.* 48 ; *Peake,* 194. *Headley* v. *Baxendale,* 9 *Exch. Rep.* 341. *Lawrence* v. *Wardwell,* 6 *Barb.* 423. *Wibert* v. *N. York and Erie R. R.,* 19 *Barb.* 36.)

IV. It is a general rule that profits which the injured party may have made, are not to be included in the injury for which compensation is to be made. They are excluded, because they are too remote and dependent upon contingencies. (*Blanchard* v. *Ely,* 21 *Wend.* 342. *Giles* v. *O'Toole,* 4 *Barb.* 261. *Freeman* v. *Clute,* 3 *id.* 424. *Headley* v. *Baxendale, supra.* *Black* v. *Baxewell,* 1 *Wels., Har. & Gr.* 410.) The only cases where profits have been allowed, are when they are the immediate fruit of the contract, and may fairly be said to have entered into the contemplation of the parties in making the contract. (*Mas-*

Kent *v.* Hudson River Rail Road Company.

*terton* v. *The Mayor of Brooklyn,* 7 *Hill,* 61.) The court in that case says, " they are part of the contract itself, *entering into and constituting its very elements ;* something stipulated for, the right to the enjoyment of which is just as clear and plain as the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made." (*See also Wilson* v. *York, Newcastle and B. R. R. Co.,* 18 *Eng. Law and Eq. R.* 557. *Watson* v. *Ambergate N. & B. R. R. Co.,* 3 *Law and Eq. R.* 497.)

V. The defendants were not advised that these sheep were to be taken to New York to be sold in the market. Can it be said that they contracted to transport them in view of that market, and assuming the hazard of its fluctuations? Suppose the market had advanced instead of declined, the defendants could have had no benefit from it. As was said by the court in *Wibert* v. *New York and Erie R. R. Co.,* " there was no *natural* connection between the breach of duty and the decline in the market. The damages flowed from the decline in the market, and they are not the result of delay."

VI. The evidence shows beyond dispute that there was no negligence or delay, on the part of the defendants, in the transportation of the 182 sheep pelts, or in the delivery of them. They were transported in the usual time to Albany, where they were consigned. The testimony of Taylor, the plaintiff's agent, shows that he never inquired for the pelts at the proper place— that is, at the freight office—or did any thing to charge the defendants with neglect in the delivery of the property. It is submitted, therefore, that the court should have charged the jury in that respect, as was requested by the defendants' counsel.

*E. G. Lapham,* for the plaintiff. I. The judgment obtained in the justice's court, in New York, is not a bar to the plaintiff's right to recover under the first count of his complaint. The suit in which that judgment was obtained was not authorized by the plaintiff. Nor did he ratify it. The only circumstance relied upon by the defendants as establishing a ratification is, that it does not appear whether or not the plaintiff,

Kent *v.* Hudson River Rail Road Company.

after he was informed by Taylor of what he had done, notified the defendants that he did not approve of Taylor's acts. This is no evidence of a ratification. The plaintiff was under no obligation to notify the defendants that he disapproved of the unauthorized acts of his agent. He was not informed of those acts by the defendants, nor did they act or rely upon his silence. The authorities cited by the defendants' counsel are not applicable to this case. They hold simply that as between *principal and agent,* long acquiescence without objection, and even the silence of the principal, will in many cases amount to a presumption, sometimes conclusive, of the ratification of an unauthorized act; especially where such acquiescence is *not otherwise to be accounted for,* or such silence is either *contrary to the duty* of the principal, or has a tendency to *mislead* the agent.

II. The decline in the market price of the sheep, between the time when the defendants ought to have delivered them in New York, and the time when they did deliver them, is a proper element of damages.   (1.) The defendants promised to deliver the sheep at a specified time—the next Tuesday morning. This promise and the breach of it, are alleged in the complaint. Whatever may be the rule in cases where a common carrier undertakes to convey and deliver goods not perishable, without specifying any time for their delivery, it is not questioned but that where he promises to convey and deliver perishable goods within a limited time, a fall in the market price is a proper item of damage.   (*Wilson* v. *York, Newcastle and B. R. R. Co.,* 18 *Eng. L. and Eq. Rep.* 557, *note. Wibert* v. *New York and Erie R. R. Co.,* 19 *Barb.* 36, 48.)   (2.) But assuming that the defendants did not undertake to convey and deliver the plaintiff's sheep, *within a limited time,* they were nevertheless obliged by their contract to use due diligence and deliver the sheep in a *reasonable* time; and if, after the expiration of such reasonable time, and before the sheep were in fact delivered, there was a decline in their market value, at the place of delivery, such a decline is a proper element of damage.

This position is denied by the defendants' counsel on the

Kent *v.* Hudson River Rail Road Company. .

authority of *Wibert* v. *New York and Erie R. R. Co.*, decided by the supreme court, in the eighth district, at general term. The opinion was delivered by Marvin, J., Justices Bowen and Mullett concurring. The reasoning of the learned justice is briefly this : Nothing can be allowed as legal damages, which is not the *natural* and *proximate consequence* of the act complained of; the decline in the market price of the property was not a *natural* result of the delay of the carrier to deliver it in a reasonable time, and the loss by the decline in price was not a *proximate consequence* of the delay ; therefore, such decline and loss cannot be allowed as damages. As to the rule that the damages must be the natural and proximate consequence of the act complained of, the language of the authorities on the subject, and the reasons assigned for the disregard of remote or consequential damages, are far from uniform. (2 *Greenl. Ev.* § 256. *Sedg. on Dam.* 75.) It is sometimes said, in regard to contracts, that the defendant shall be held liable for those damages only which both parties may fairly be supposed to have *at the time contemplated* as likely to result from the nature of the agreement. (*Sedg. on Dam.* 64.) Within this rule it is clear that the plaintiff is entitled to the damages allowed. Again, it is sometimes laid down as a rule, that damages consisting of a *loss of profits* will not be allowed, whether in cases of contract or of tort. But this rule is taken with many limitations. (*Sedg. on Dam.* 81. *Masterton & Smith* v. *City of Brooklyn*, 7 *Hill*, 61. *White* v. *Mosely*, 8 *Pick.* 356. *Tarleton* v. *McGawley*, *Peake's N. P. Cas.* 205. *Dewint* v. *Wiltse*, 9 *Wend.* 325. *Driggs* v. *Dwight*, 17 *id.* 71.) But however uncertain may be the general rule, it is established that in case of the breach of a contract to *transport goods* to a particular place, where there is an *entire* failure to transport, the measure of damages includes the difference between the price at the point where the goods are, and the place where they were to be delivered, which in fact amounts to *an allowance of profits;* and in actions on agreements for the *sale and delivery of chattels*, a similar result is had by giving the vendee the benefit of the rise of the market

price. Not one of the cases cited by Justice Marvin, for the purpose of showing the application of the rule of damages laid down by him, belongs to either of these two classes. (19 *Barb.* 48.) How is a decline in the market price, occasioned any more directly or necessarily by the breach of a contract to *sell* and deliver goods, than by the breach of a contract to *carry* and deliver them? Justice Marvin says (*p.* 41) the vendee " would have made *as profits* the difference between the price he was to pay, and the value of the article, at the time and place of delivery, and the profits he could thus have made are, in law, his damages. They *result* directly from the breach of the contract, the act complained of." It is difficult to see why this reasoning, if sound, does not apply as well to one case as the other. It is submitted that in neither case does the act of the defendant *occasion the loss*, except by depriving the plaintiff of the opportunity *to avail himself of the state of the market* at the time when the defendant ought to have delivered the goods, and in this way it does occasion the loss, *in both cases*. Again, the learned justice concedes that a decline in the market price is allowed as damages in action against *carriers*, where the goods have been *wilfully* delayed by the carrier, or *embezzeled* or *lost* on the way. Now if in these cases the damages are the *natural and proximate* consequences of the act complained of, upon what ground shall it be held otherwise in the case in hand? The reason assigned by the learned justice is, that " the rule where there has been a *failure to deliver* is a convenient and practicable one, and excludes contingencies. It does not give to the owner of the property the *chance of getting a higher price* by an advance in the market, after the day when the property should have been delivered." (*P.* 44.) In the first place, it is submitted that this supposed "chance" of an advantage is simply a disadvantage to the owner. He is obliged to receive the property whenever it is convenient for the carrier to deliver it, even although it be at a depreciated price, with a falling market, and with the probability that it cannot be sold except at a still further depreciated price. Would the condition of the carrier be improved

Kent v. Hudson River Rail Road Company.

if by reason of his delay in delivering the property, he was obliged to retain it, and pay the owner its entire value, or in other words, if he had what the learned justice terms "the chance of getting a higher price" for the property than he was obliged to allow for it? In the next place, there is one class of cases where the owner has the chance of getting a higher price for the property after it should have been delivered, in which the learned judge concedes that the rule of damages we contend for is the true rule; and that is, as we have seen, where the carrier expressly agrees to deliver the goods within a limited time. In reality there is no difference, so far as this question is concerned, between an agreement to convey and deliver goods at a specified time, and an agreement to convey and deliver them within a *reasonable* time. The plaintiff must show what is a reasonable time in order to recover, and that being done, the grounds and elements of damage are the same as if the time thus fixed by the proof had been fixed by the contract.

III. As to the point whether the inquiry which the plaintiff's agent made for the sheep pelts was addressed to the proper agent of the defendants, or as to whether he made a proper demand for them, the charge of the judge at the circuit was as favorable for the defendants as they were entitled to, and was unexceptionable.

IV. The verdict is according to law and the evidence.

*By the Court*, E. DARWIN SMITH, J. Two questions are presented for the decision of the court, on the motion for a new trial in this case. 1st. Is the judgment recovered before the justice of the peace in the city of New York, a bar to the plaintiff's recovery in this action? 2d. Was the decline in the market price of the sheep, between the time they should have arrived in New York and the time when they did arrive, a proper measure of damages. On the first point, the judge advised the jury that the judgment recovered in the justice's court in the city of New York, by the defendants, in the suit commenced by the plaintiff's agent, for the same cause of action for which

this suit was brought, was a bar to the plaintiff's claim, unless it was commenced and prosecuted without the plaintiff's authority. And he also instructed the jury that if the suit was commenced without authority, and the plaintiff had since ratified Taylor's (the agent's) authority, it was still a bar. I can see no error in this part of the charge. It was as distinctly in favor of the defendant as the judge could reasonably be expected to make it, on submitting the question, under the evidence to the jury. It was a question for the jury whether the suit in question had been brought or ratified by the plaintiff, and they have passed upon it conclusively. The other point, respecting the fall in the market price of the sheep between the time when they should have been delivered and the time of their actual delivery, is one of more difficulty. On this point the judge charged the jury, that if they found that the plaintiff was entitled to recover any loss sustained by him by a fall in the market between the times when the sheep should have arrived and when they did arrive, was a proper element of damage. This view of the question of damages was more fully amplified and explained; but the judge, in substance and effect, allowed and directed the jury to take the fall in the market value of the sheep into account, in making up their verdict, as a fit and proper basis or element of damages, in connection with other facts and circumstances. That the charge of my brother STRONG was entirely correct in substance on this point I should have had no doubt, but for the very able and elaborate opinion of Judge MARVIN, in the case of *Wibert* v. *The New York and Erie Rail Road Company*, (19 *Barb*. 36.) Ordinarily we should feel ourselves bound to follow an opinion so carefully pronounced at general term; but the decision at the circuit being in conflict with this opinion, we are called upon to decide the point presented for ourselves; and considering the importance of the question, and the likelihood that our decision of it as an open question will tend to hasten its settlement in the court of dernier resort, I will proceed to present such views as have led me, with much diffidence, to dissent from the conclusions of the learned and experienced judge who gives the opinion of the general term of

the 8th district. The complaint in this action states that the plaintiff, on some Monday in the month of March, 1853, delivered to the defendants, as common carriers, 80 fat sheep, which the defendants then and there accepted and received of and from the plaintiff, to be safely and securely carried and conveyed over the route of their said road from Albany to New York city, and to be delivered on the next day, Tuesday, to the plaintiff, in New York. Under the evidence, the jury would have been warranted in finding that the sheep were to be delivered on Tuesday morning. The agent of the defendants said, when they were received by him, that they would be in New York the next morning at 4 o'clock, and they did not arrive till Thursday morning. Whether the defendants were bound as upon an express contract to deliver the sheep on Tuesday morning or to deliver them without unnecessary delay, can make no difference ; for the carrier's duty rests upon contract implied in law. (*Edwards on Bailments*, 466.) He is bound to transport and deliver the goods within a reasonable time. (*Id.* 521, 4, 5.) But here there was a time specified when the goods were to be delivered, and that time corresponds with the time when they should be deliverd in the ordinary course of the business of the defendants. It is apparent upon the facts of this case, and the jury have so found, that the plaintiff actually sustained a loss from the non-delivery of the sheep according to the contract, or according to the custom in respect to the time required or employed in the transportation of such articles, to the amount claimed, $125. This damage, in the aspect in which the point is presented, resulted from a fall in the market value of the sheep, between Tuesday morning and Thursday. The damages to be recovered, Judge MARVIN says, must always be the "*natural and proximate consequences of the act complained of,*" and cites 2 *Greenl. Ev.* 253, 254, 256 ; 5 *Wend.* 538 ; 6 *Hill,* 648, and *Sedg. on Damages, ch.* 3 ; and he argues that the fall of price in the market was not a *proximate consequence* of the delay of the carrier in making the delivery. He says, "the damages flowed from the decline in price, and they are not the result of the delay." Again, the learned judge says, "The question is,

what connection or relation was there between the act complained of and the decline in the market in the price of butter ;" and again, " But how it can be argued that a decline in price is a consequence of the non-arrival of the article, I am not able to comprehend." Also, " There was no natural connection between the breach of duty by the defendant and the decline in the price of the butter in the market." The theory of damages as suggested and involved in these extracts from the opinion of the learned judge is, that the damages properly recoverable in an action must be the direct and immediate consequence of the injury or breach of duty complained of. The rule of damages thus enunciated belongs to the large class of injuries, direct and immediate, for which, under the old nomenclature, the action of trespass was the appropriate remedy, and practically ignores the large class of consequential injuries for which trespass on the case or assumpsit was the proper form and name of the action. The first case which the learned judge cites upon this theory of damages is *Davis* v. *Garret,* (6 *Bing.* 716 ; 19 *Eng. Com. L.* 321.) In that case the action was for the loss of 114 tons of lime, received by the defendant on board of his barge or vessel, to be carried and conveyed on board said vessel from Blinby Cliff, in Kent county, to the Regent's canal, in Middlesex. It appeared, on the trial, that the defendant deviated from the usual and customary way and course of the voyage, without justifiable cause, and that, in consequence, the vessel became exposed to a great storm at sea, in which the lime was heated and the barge caught fire and was lost. A verdict was found for the plaintiff, and a rule obtained, nisi, for a new trial. The argument of the learned sergeant, Taddy, for the defendant was, " That the deviation by the master of the barge was not a cause of the loss of the lime sufficiently proximate to entitle the plaintiff to recover, inasmuch as the loss might have been occasioned by the tempest if the barge had proceeded in her direct course ;" precisely as Judge MARVIN holds that the delay in delivering the butter did not cause the decline in the market. The deviation of the master from the course did not produce the storm, and the storm caused the loss of the barge

Kent *v.* Hudson River Rail Road Company.

and the lime.  The learned Judge Tindal, C. J., says, " But the objection taken is, that there is no natural or necessary connection between the wrong of the master, in taking the barge out of its proper course, and the loss itself; for the same loss might have been occasioned by the very same tempest if the barge had proceeded in her direct course.  But if the argument were to prevail, the deviation of the master, which is undeniably a ground of action against the owners, would never, or only under very peculiar circumstances, entitle the plaintiff to recover.  For if a ship is captured in the course of deviation, no one can be certain that she might not have been captured in her proper course.  And yet, in *Parkes* v. *James*, (4 *Camp.* 112,) where the ship was captured while in the act of deviation, no such ground of defense was ever suggested."  The verdict was sustained.  This case seems to me to confute the theory that damages must be *proximate*, in the sense in which these terms are used by Judge MARVIN.  This case holds that the plaintiff may recover for indirect or consequential damages which result from a breach of duty or a breach of contract, and that it is not essential that the breach of duty in the carrier, or the non-performance of his contract, should be the immediate and direct cause of the damage, but only that the damage should be the immediate and direct result of the violation of the duty or breach of contract, which is quite a different thing.  The learned judge also cites the case of *Bracket* v. *McNair*, (14 *John.* 170,) and *O'Conner* v. *Foster*, (10 *Watts*, 418,) and holds that they are inapplicable to the case.  These cases seem to me applicable to this extent, that they both apply to a common carrier, who fails to deliver property according to his contract, the same rule of damages that applies between vendor and vendee ; that is, the difference between the contract price at the place of purchase by the vendee and of shipment by the carrier, and the place and time of delivery.  In the case in *Watts*, Sergeant, J. says, " The defendants were bound by their contract to transport the wheat from Pittsburgh to Philadelphia, and have shown no legal excuse for refusing to do so.  The question is, what is the measure of damages to be paid by the

carrier for violating such a contract. The defendants have not fulfilled their contract, and they ought to place the plaintiff in the same situation as if they had fulfilled it. They ought to be indemnified. The wheat was a consumable article of merchandise at its port of destination, calculated for sale in the market there, where the price fluctuates from day to day and sometimes from hour to hour." This was the precise case with the butter in *Wibert's case,* and the sheep in this case, fatted as they were expressly for the New York market, and designed to go into the daily consumption of that city. The learned judge further says, "The market value of the article there, at the time it would probably have arrived and been ready for sale, is what it would have been worth to the plaintiff; and the difference between that and the value at the place of shipment, added to the cost of freight, is the amount of loss which the plaintiffs have sustained. Such is the well established rule between vendor and vendee. (7 *Hill,* 74. *Dey* v. *Dox,* 9 *Wend.* 129. 2 *Barn. & Cress.* 629.) The difference between the contract price and the market value at the time and place of delivery is the measure of damages in all cases of sale of merchantable commodities between vendor and vendee ; except that the carrier is entitled to deliver, and the owner is bound to receive, the property, after the time fixed for the delivery by the contract, or the reasonable time necessarily employed in it transportation, in the absence of any express contract. The analogy and the reason of the rule is perfect as between the carrier and the owner, as between vendor and vendee. And the rule was practically so applied in *Smith* v. *Griffith,* (3 *Hill,* 333.) This was as an action on the case, against the carrier, for damages arising from delay in the delivery of mulberry trees, or seedlings. The trees were delivered to the defendant at Troy, April 22, 1839, for transportation to Lyons, Wayne county. After delivery they were allowed to remain at Troy till the 24th day May following, and were then forwarded to, and received by, the plaintiff about the first of June afterwards, when they were found to be considerably damaged. The question was, what damages the plaintiff was entitled to recover. Considerable

Kent *v.* Hudson River Rail Road Company.

conflicting testimony was given at the circuit in regard to the market value of the trees at the time of the injury, and the plaintiff had a verdict of $12.50. The defendant on the trial sought to mitigate damages, by showing that subsequent experience had shown that the trees were of little or no intrinsic value at the time of the injury, and that the prices at which they were held and sold in the market at the time of the injury, were fictitious and inflated. Speaking of this evidence, on the motion for new trial, Judge Nelson says : " All this evidence, I am of opinion, was properly rejected, as having no legitimate bearing upon the question. The damages to which the plaintiff is entitled, if any, should afford an adequate indemnity for the loss sustained at the *time the injury happened,* and the admission or rejection of evidence should be regulated with a view to produce this result in the opinion of the jury. If the goods are wholly lost or destroyed, the owner is entitled to their full worth at the time of such loss or destruction. In trover the measure of damages is the value of the goods at the time and place of conversion, with interest, and perhaps at any time between that and the trial. (14 *John.* 128. 3 *Cowen,* 82.) And, upon the same principle, if goods are partially injured, and the party seeks redress for the qualified damage, the measure should be in that proportion. Assuming that there is no defect in the quality, the fair test of its value, and consequently of the loss to the owner, is the *price at the time in the market.*" This case, in its facts and in the principle upon which it is decided, is quite in point in opposition to the opinion in *Wibert's case,* and in confirmation of the charge of my brother STRONG, at the circuit, in the present case. The damages for which the carrier was held liable, resulted from the delay of the carrier in the delivery of the trees within a reasonable time after their receipt. It was not a case of contract. The measure of damages was the deterioration of the property between the time when it should have been delivered and the period of its actual delivery, with reference to the market value when it should have been delivered. The owner received the property as in this case and in the case of *Wibert,* and

as he was clearly bound to do. (6 *Hill,* 588.  2 *Kernan,* 509.
*Parsons on Contracts,* 659.)   Delay  in  the  delivery is  not  a
conversion  by the carrier.   (*Idem.*)   If the  loss  from  the de-
terioration of  the  property  in  its  market  value, between  the
time  when  it  should  be  delivered  and  the  time  of the  actual
delivery, be  the true measure  of  damages when there  is  a par-
tial  injury  to  the  property,  it  must  be  the  true  measure  of
indemnity  where  there  is  unreasonable  delay  in  the  delivery.
I  can  conceive  of  no  reason  for  a  distinction between  the  cases.
It  is  the  loss  which  the  party  suffers  from  the  breach of  duty
or  breach  of  contract  of  the  carrier.   The  carrier  is  in fault
for  his  negligence  or  failure  to  perform  his  contract,  and  the
owner  suffers  loss.   This  is  the  adequate  indemnity  for  the
loss  sustained,  spoken  of  by  Judge  Nelson.   The  failure  to
deliver  in  a  reasonable  time  may  fitly,  for  the  purpose  of
damages,  be  deemed a  partial  conversion  at  that  time  and for
the  time  being.   To  the  extent  of  the  loss  or  injury,  it  is  a
practical  conversion  from  that  time  till  the  period  of  delivery.
The  owner  is  bound  to  receive  property  when  delivered,  but
if  it  is  then  depreciated  in  value  in  the  market,  there  can  be
no  other  rule  than  that  the  carrier  must  make  up  the  loss.
The  case  of  *Scovill*  v.  *Griffith,*  (2  *Kernan,* 509,)  it  seems  to
me,  virtually  affirms  the  same  view  of  the  question  of  damages.
This  action  was  against  the  carrier,  claiming  to  recover  the
value  of  several  boxes  of  merchandise,  in  consequence  of  the
unreasonable  delay  of  the  carrier  in  delivering  them.   At  the
trial  before  Justice  Edwards  the  jury  were  charged  that  the
rule  of  damages,  when  the  goods  were  not  delivered  within  a
reasonable  time,  as  was  this  case,  "would  be  the  difference  be-
tween  the  highest  market  price  of  the  goods  when  or  after  they
should  have  been  delivered,  and  the  time  when  they  were  actu-
ally  tendered,  and  the  expense  the  plaintiffs  were  put  to  by  the
delay."   To  this  portion  of  the  charge  there  was  no  exception.
In  the  opinion  of  Judge  Hand,  in  the  court  of  appeals,  he
says,  speaking  of  the  delay  in  the  delivery  of  the  goods,  "This
was  inexcusable,  and  undoubtedly  entitled  the  plaintiffs  to  all
real  damages  sustained  by  them  which  were  the  *natural con-*

*sequences* of the neglect;" and he says, " When there has been deterioration and loss, the carrier is liable;" and he cites 6 *Bing.* 716; *Davis* v. *Ganit,* (*supra;*) *Ellis* v. *Free,* (8 *John.* 531;) *Story on Bailments,* § 588. In the opinion of Judge Gardiner he refers to the charge of the judge in regard to the damages, in the way of approval, and also in another part of his opinion he says: "When there is an omission to deliver property in a reasonable time, the owner is entitled to a full indemnity, and refers to the market value as one of the circumstances entering into the element of damages." No doubt seems to have been suggested in this case but that the charge of the judge at the circuit on this point was right. The principle of these cases casts upon the carrier the loss arising from depreciation of the property, while the same remains in his his hands after the period when it should be delivered. The case of *Wilson* v. *The York, Newcastle and Berwick Railway Co.,* (18 *Eng. Law and Eq. Rep.* 553,) is a case of the loss of profits consequent upon the neglect of the carrier, or failure to comply with his contract in regard to the delivery of fish, designed for the London market. This case, in this aspect, would perhaps warrant a recovery in the present case for the damages demanded as the loss of profits on the sheep, but it at least is authority for the loss arising from the depreciation of the property in the market, consequent upon the unreasonable delay of the carrier in its delivery. It appears in the case of *Wibert,* that between the time when the butter, with reasonable diligence, might have been delivered in New York, and the time when it was actually delivered, the price of butter had declined four cents a pound in the market. In respect to this difference in price the learned judge says: " Suppose that we admit this brings the case within the rule of resulting damages, and that the loss was the consequence of the negligence, and the question will then be presented, were the damages *proximate?*" He then reasserts that the proximate cause of the loss was the decline in the market; and in another part of the opinion he says, "I find it difficult in this case to consider this part of the rule as to damages im-

mediately resulting from the act complained of, as I have been unable to see that the fall in the market price of the butter resulted at all from the breach of duty by the defendant. This must be established before we can fix our minds upon the question of proximity or remoteness," and he refers to *Masterton* v. *Mayor of Brooklyn*, (7 *Hill*, 67,) and cites from the opinion of Judge Nelson, that "remote and contingent damages depending upon successive schemes or investments are never allowed for a violation of a contract." This is all true; but in that case it was held that the party was entitled to recover in damages the *fruits of his contract*—what he would have realized if the contract of the other party had been performed. The loss of profit was contingent—was not a necessary consequence of the breach of the defendant's contract, and in this sense was not proximate, more than the loss of Wibert was proximate upon the neglect of the rail road company to deliver the butter within a reasonable time. No damages necessarily resulted from the refusal of the city of Brooklyn to receive the marble, in the case of Masterton, more than from the delay of the rail road company to deliver the butter, in the case of Wibert; and yet in both cases the damages to the plaintiff resulted from, or were consequent upon, the refusal or neglect in question. If the proximity of the injury to the damages must be so intimate in the relation of cause and effect that the injury immediately and necessarily produces the damages, or must do so to sustain an action without the intervention of any immediate cause or agencies, the rule would exclude a recovery in all such cases as that in *Masterton* v. *The Mayor of Brooklyn*, and indeed in all cases except for injuries of force or of palpable connection. The rule that the action can only be sustained for the damages which are proximate, as stated by the learned judge, is one of a general character and of universal application. It must apply with equal force between vendor and vendee, and in all cases of nonfeasance or for consequential injuries. If a man digs a pit in the street in front of his house, and his neighbor falls into it and break a leg or an arm, the digging of the pit would not be the proximate cause

Kent v. Hudson River Rail Road Company.

of the injury, as the learned judge states the rule, for the digging of the pit would not cause the neighbor to fall into it, more than the neglect of the defendant in the suit of Wibert to deliver the butter caused the decline in the price of butter in the market. So if a man lets a horse loose in the street, and the horse in wildness and fury causes another horse to break loose and run over a man and break his wagon or his leg, it might be said that letting the first horse loose was not the proximate cause of the breaking of the wagon or the leg by the second horse, but this would not do; the injuries must be traced to the primal cause, even though there be several intermediate links in the chain of cause and consequence. There might not be any loss to the plaintiff in the case of *Masterton* v. *The Mayor of Brooklyn*, from the refusal of the defendant to receive the marble. That was, as Judge Marvin says in respect to the non-delivery of the butter, *contingent;* but the contingency in such cases must be at the risk of the party who is guilty of a breach of contract or a breach of duty. If there be no loss there can be no damage, and no action could be sustained, or at most the damages would be merely nominal. The case in 7 Hill does hold, and very properly, that individual schemes of profit or speculation are not legitimate items of damage; but nothing of that kind was claimed in the case of Wibert or in this case. The damages, as claimed by the plaintiffs, were predicated upon the general market value of the property, and its depreciation in the market at large, from the time it should be delivered till the time of the actual delivery. If the rule of damages in such cases as the present be not as stated by my brother STRONG to the jury, on the trial of this cause, I am entirely at a loss to determine what it is, and the learned judge who gives the opinion in the case of Wibert has failed to lay down the true rule. If the learned judge had tried this cause at the circuit, I suppose he would have told the jury, assuming that the defendants had been guilty of negligence as claimed, that the plaintiff was only entitled to nominal damages. Confessedly from the neglect or default of the defendant in not delivering the butter within a

reasonable time, according to his contract, express or implied in law, the plaintiff had lost the opportunity to sell his property at the market price when it should have been delivered, and it had depreciated in value before it came to his hands. The learned judge holds that this is *damnum absque injuria.* I cannot agree with him. The principle which measures damages at common law is that of giving compensation for the injury sustained—a compensation which shall put the injured party in the same position he would have stood in had he not been injured. (2 *Parsons on Cont.* 432. *Co. Litt.* 257, *a.*) Now within the principle here stated, of giving a compensation for the injury sustained—a compensation which shall put the injured party in the same position in which he would have stood had he not been injured—what other rule can be applied to make him whole and indemnified for the defendants' breach of duty or default, but to hold him to make good the loss from the depreciation of the property from the time it should have been delivered till it was delivered? This is a simple, plain rule, easily applied, and the only one which will afford a full indemnity. The learned judge who tried this cause at the circuit left the case to the jury, in a proper and judicious manner. He told them that the fall in the market between the times when the sheep should have arrived and when they did arrive, *" was a proper element of damage ;"* that the loss resulting from the delay, by preventing the plaintiff from availing himself of the market, was a proper subject for their consideration in estimating the amount of damages. The jury were directed to take the whole subject into consideration and give such damages as were just, in view of all the facts of the case.

The verdict was right, and a new trial should be denied.

[MONROE GENERAL TERM, September 1, 1856. *T. R. Strong, Welles* and *Smith,* Justices.]