Peckham, J.
 

 It is insisted by the defendant, that it is not liable for any damages happening to this property after it reached Albany and was placed in the custody of the Hudson River road for further transportation, because the contract for transportation showed that its liability as common carrier ceased at Albany. The answer to this is, that the referee finds expressly, that “ the defendant received this property of plaintiffs for transportation to the city of Hew York,” and the whole evidence is not contained in the case. Only a small part is retained, and then the case adds that “ evidence was introduced by the parties, from which the referee found the facts which appear in Ms report.” Under such circumstances it cannot be said that the referee has found this fact
 
 *32
 
 without any evidence to support it. We are bound to presume that there was sufficient evidence.
 

 The facts as found present the distinct question, what is the ' measure of damages against a carrier who has negligently omitted to deliver the goods at the time he ought to have delivered them ?
 

 Where a contract has been violated the law intends to give to the party injured the damages caused thereby; that is, the natural and proximate damages caused by the breach. It is supposed that both parties contemplated the consequences of such breach at the time they made the contract, and acted accordingly both in mating and in performing or violating its provisions.
 
 (Griffin
 
 v.
 
 Colver,
 
 16 N. Y., 489, and cases there cited.)
 

 Where a carrier from mere negligence, from plain violation of duty, omits to transport merchandise beyond a reasonable time and its market value falls in the meantime, the true rule of damages in my judgment both upon principle and authority, is the difference in its value at the time and place it ought to have been delivered and the time of its actual delivery. The rule is simple, and though it may sometimes operate harshly, easily applied.
 

 Sagacious business men rely upon their ability to judge of the market in undertaking large commercial projects. According to their views of the market, they send their merchandise by a quick or by a slow carrier, and make compensation accordingly.
 

 A contrary rule would deprive them of all benefit of a rapid transit. It would be left to the caprice of the carrier when to transport, and the owner could have no relief. It would be no answer to say that the owner might make a special contract for the transport at a given time. The contract would have to contain a special provision
 
 to
 
 pay these damages or the carrier’s liability would not be altered. If a ■ special contract be needed, I think it falls upon the defendant to make it, or the company will be liable for not delivering in a reasonable time.
 

 
 *33
 
 If the carrier would be liable for these damages upon a special contract to transport by a given time, he clearly would be for a violation of his duty. In the absence of any special agreement, the law implies that the carrier agrees to transport in a reasonable time. That is his duty. In failing to do so, he not only violates his duty, but also the contract upon which it is based. The only legal difference is that by the special contract, the carrier agrees and is required absolutely to transport by a given time. In such case, no excuses will save him from damages for a breach such as will entirely shield him in the absence of a special agreement. (Red. on Rail., 161-3, 273;
 
 Harmony
 
 v. Bingham, 12 N. Y., 99.)
 

 It is well settled law that a carrier, on an entire failure to deliver, is liable for the market price of the goods at the time and place for delivery.
 
 ((O'Hanlon
 
 v.
 
 North. R. R. Co.,
 
 6 Best. & Smith, 484 ;
 
 Bracket
 
 v.
 
 McNair,
 
 14 J. R., 170.) So held at the present term of this court.
 
 (Sands
 
 v.
 
 Lilienthal,
 
 46 N. Y., 541.) So as to a sale of goods. For all damages to the property while in the custody of the carrier, the measure thereof is to be settled by the market at the place for delivery. This is clearly so as to all inland carriage. See the last case.
 
 (Bracket
 
 v.
 
 McNair,
 
 14 J.
 
 R.; supra,
 
 45 Barb., 502.)
 

 If liable for the market price at the time and place for delivery where not delivered at all, it would seem equally rational that if by reason of the inexcusably negligent delay of the carrier, the value of the goods has depreciated in market, he should be liable to the owner to the extent of that depreciation. The purpose of the law is to make the owner whole in each case.
 

 There is an elaborate opinion in favor of the defendant in
 
 Wibert
 
 v.
 
 The N. Y. and. E. R. R. Co.
 
 (19 Barb., 36), but the point was not necessarily decided. The referee obviously erred in finding the road guilty of negligence in not forwarding the goods. The same opinion was reiterated by the same court in 29 id., 633. With this exception I am not aware of any decision in that direction here or elsewhere. The chief objections urged against this rule are that the damages are not
 
 *34
 
 proximate, but remote, if any damages at all; that in fact the delay is.not the cause of the damage; it did not cause the fall; that the goods being delivered in good order, the loss caused by the fall in the market cannot be charged to the carrier as damages; that markets are fluctuating and uncertain.
 

 Had the goods been injured by reason of improper exposure by the carrier, and thus had become depreciated in their market value, it is clear that the carrier would be liable for the loss. It was his negligence that caused it. Here his negligent delay caused the loss. It did not cause the decline in the general market, but it deprived the owner of his right to the higher market price. The defendant’s negligent violation of its duty thus deprived the plaintiff of his right, and placed this loss upon him. In substance, this loss is the same to the plaintiff as if the injury had been done to the property itself and thus diminished its market value. The injury also is natural and direct. There is no second step; no action of the owner with a third person by contract or otherwise. It is true there are fluctuations in the market. They prevail to some extent as to all commodities which are the subject of transportation.
 

 That is not a sufficient reason for abolishing their use in ascertaining the rights and liabilities of parties. Confessedly they regulate the rights of parties where there is an entire failure to deliver either by a carrier or by a vendor. Legally they are the true measure of the value of the goods. Arriving so late, later by the carrier’s negligence, these goods were not worth as much as at the time they should have arrived ; not so much when measured by the rule that governs the commercial community. Their actual value was less when measured by the only standard that regulates values.
 

 Why should not the defendant pay this loss its. negligence has caused ? The rule as here claimed is decided to be the .true one, in
 
 Kent
 
 v.
 
 Hud. R. R. Co. (22
 
 Barb., 278); in
 
 Medbury
 
 v.
 
 N. Y. and E. Road
 
 (26 Barb., 564). It is fully recognized in
 
 Griffin
 
 v.
 
 Colver
 
 (16 N. Y.,
 
 supra).
 
 It is so -decided in England, in
 
 Collard
 
 v.
 
 S. E. Railway Co.
 
 (7
 
 *35
 
 Hurl. & N., 79); in
 
 Wilson
 
 v.
 
 The Lancashire and York Rail. Co.
 
 (99 Eng. C. L., 632);
 
 Same
 
 v.
 
 N. Castle and Ber. R. Co.
 
 (18 E. L. & E., 557). In one of these eases
 
 (Wilson v. The New Castle and Ber. R. Co.)
 
 the contract required the merchandise to be transported by a certain time, but was silent as to paying any damages. It is also so held in many of our sister States.
 
 (Cutting v. Grand Trunk R. R. Co.,
 
 13 Allen, 381;
 
 Sisson
 
 v.
 
 The Cl. and Tol. R. R. Co.,
 
 14 Mich., 489.)
 

 But if this be not the true rule as to the measure of damages, what is ?
 

 Wibert v. The Erie Road
 
 gives no aid upon this point. That holds substantially that the road is not responsible for such a loss. It is
 
 damnum absque injuria.
 
 It in effect holds that the road’s neglect, whereby the goods are delayed and subjected to a fallen market, and the owner to that loss, is no legal injury. We all think otherwise, and that this is the only rule that does justice between the parties.
 

 It is urged, however, that there was no evidence that this property was sent to Hew York to be sold in market; none that it was actually sold at a loss.
 

 From the findings of the referee, I think it clear that the plaintiff had sustained these damages,
 
 “
 
 resulting solely from a fall in the market pricebut he held that such damages were not recoverable.
 

 If the plaintiff sold the goods in a brief time after their arrival, without sustaining any loss, that would be matter of defence; thus showing that the fall was a mere momentary fluctuation in the market, and that the delay really did not injure the plaintiff.
 

 The rule is undoubtedly somewhat stringent; hence the proof of negligence in this respect should be quite clear.
 

 There are many circumstances that would excuse a carrier from transporting in the time usually required for an ordinary passage; an unusual crowd of freight, storms or freshets, etc., etc. (2 Red. on Rail., 261, § 173, and cases in note.)
 

 
 *36
 
 Judgment should he reversed and new trial ordered, costs to abide the event.
 

 All concur.
 

 Judgment reversed.