ceded by the appellant that the policy was severable, but it is urged that, inasmuch as a portion of the furniture and fixtures were concededly incumbered by a chattel mortgage, the insurance was invalidated upon so much of the insured property as fell within the description of "furniture and fixtures."

It is well settled that if a portion of the personal property covered by insurance be subject to a chattel mortgage, there being no waiver or indorsement, the whole insurance is void, even as to the property not affected by the mortgage. Fitzgerald v. Atlanta Home Ins. Co., 61 App. Div. 350, 70 N. Y. Supp. 552. It follows in the present case that the policy was void as to all of the "furniture and fixtures," and it remains to be considered what was included in that term. The policy itself answers the question, the words being defined as including, among other things, the "tools, implements and utensils used in the business of the assured." The proofs of loss, as well as the plaintiff's bill of particulars, include, under the item of "stock" not affected by the chattel mortgage, a great number of items answering to the description of tools, implements, and utensils commonly used by barbers in their business, and the amount of the recovery shows that their value must have been included in the judgment. So far as may be judged from the inventory, but little of value would seem to be properly included under the term "stock," as that word was used in the policy. It would, perhaps, be too harsh to say that in making up his proofs of loss the plaintiff willfully swore falsely, since he does not appear to be skilled in the English language, and may have overlooked the definition of the words "furniture and fixtures" contained in the policy. It seems to be clear, however, that the existence of the chattel mortgage avoids the policy as to everything comprised within the term "furniture and fixtures," and that all of the tools, implements, and utensils used by plaintiff in his business are comprised within those terms, no matter under what head he may have classified them in his proofs of loss.

The judgment must be reversed and a new trial granted, with costs to appellant to abide the event. All concur.

---

## G. S. ROTH CLOTHING CO. v. MAINE S. S. CO.

(Supreme Court, Appellate Term. June 23, 1904.)

1. CARRIERS OF GOODS—DELAY IN DELIVERY—MEASURE OF DAMAGES.
   In an action against a carrier of goods for failure to deliver the same within a reasonable time, the measure of damages is the difference in value of the merchandise at the time and place it ought to have been delivered and at the time of its delivery.

2. SAME—NOTIFICATION OF CONSIGNEE—CUSTOM.
   A well-known local custom that a carrier of goods shall notify the consignee by mail is to be considered a part of the agreement of transportation.

3. SAME—EVIDENCE.
   On an issue as to whether the consignee of goods was notified of their arrival, the presumption attending evidence by the carrier's clerk that

¶ 1. See Carriers, vol. 9, Cent. Dig. § 451.

three notifications were mailed to the consignee was not rebutted by the simple statement of the consignee's bookkeeper that he never received the notifications.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by the G. S. Roth Clothing Company against the Maine Steamship Company. From a judgment for plaintiff, defendant appeals. Reversed.

See 86 N. Y. Supp. 25.

Argued before FREEDMAN, P. J., and MacLEAN and SCOTT, JJ.

Carpenter, Park & Symmers, for appellant.
Sahfer & Levin, for respondent.

MacLEAN, J. As appears by its receipt, the defendant received from the plaintiff on September 15, 1902, a package of clothing marked "The Colebrook Clothing Co., Colebrook, N. H." The first plaintiff heard of it again, testified to by its assistant secretary and bookkeeper, was through a postal dated and postmarked February 16, 1903, advising of the receipt by the defendant at its pier of "1 case clothing" consigned to the plaintiff. Upon personal inquiry at the pier the same witness found that the case contained the missing goods, which he was told they had had a long time—since September—and that they had notified the plaintiff a number of times, and received no answer. The goods were tendered and refused, because of the loss which the witness said amounted to 50 per cent. of their value by reason of advance of the season towards spring, the garments being intended for winter wear. Upon the second trial—for the cause had been tried twice, and by stipulation the evidence taken upon the first was used upon the second trial, whereon were adduced on both sides new evidence important in several particulars—upon the second trial the same witness said that the goods would be worth 20 per cent. more in January, on December 15th pretty near their full value, and on December 1st the full value; showing, in effect, that if the defendant, the carrier, did all that was incumbent upon it by or before December 1st, the plaintiff had no cause of action, for the damages of the plaintiff, if any, would be the difference in the value of the merchandise at the time and place it ought to have been delivered and at the time of its delivery or tender. Ward v. N. Y. C. R. R. Co., 47 N. Y. 32, 7 Am. Rep. 405. In extension of the rule that it is the duty of the carrier not only to transport the goods, but also to deliver the goods, or equivalently give the consignee timely notice of their arrival, plaintiff's counsel contends, in effect, that such notice must be conveyed by messenger to the consignee; citing Solomon v. Phil. & N. Y. Ex. Co., 2 Daly, 104, decided in 1867. This doctrine the defendant met by proving a rule more efficient than judicial speculation—the local custom commonly recognized both by merchants and others, so reasonable and well known as to be considered a part of the agreement of transportation, that such notification shall be made through the machinery of the postal service, commonly more effect-

ive and reliable than any system of messengers, made by postals open to perusal without breaking the cover. Evidence of three such notifications on the part of the defendant during the first 14 days of October was given by a clerk, who testified to the contents of the notice, one directed by another and two by himself, written in a printed form printed upon.postals, correctly addressed to the plaintiff at 714 Broadway, New York City, its place of business, and then mailing in the letter box at the corner of South and Pike streets. On cross-examination this evidence was not shaken, but strengthened. The presumption attending such evidence was not rebutted by the simple statement of the assistant secretary and bookkeeper that he never received postals. This evidence the learned court below might not disregard, as it evidently did. For that error, without consideration of other objections and exceptions urged by the defendant, the judgment appealed from should be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.