No. 26,370.

J. W. Craig, *Appellant*, v. St. Louis-San Francisco Railway Company, *Appellee*.

SYLLABUS BY THE COURT.

Carriers—*Liability for Delay—Necessity for Actual Injury—Nominal Damages.* Wheat purchased for export moved on bills of lading bearing the notation "For Export," from points of origin on the carrier's railroad in Kansas and Oklahoma, to Galveston and New Orleans. Pursuant to stipulation in the bills of lading, the wheat was there placed by the carrier in terminal elevators, and mingled with other wheat of like quality. On presentation and surrender of the original bills, and to fulfill the shipper's contracts of sale for export, wheat equal in quantity and quality was delivered by the elevators on board ships and was exported to foreign destinations. There was delay in the transportation of the wheat to ports of exportation, and the shipper sued for damages occasioned by the delay. No contract of sale for export was not fulfilled, and no difficulty was experienced in fulfilling any contract of sale because of the delay, and there was no evidence that the shipper's business as a dealer in grain for export was detrimentally affected by the delay. *Held,* the shipper was entitled to nominal damages only.

Appeal from Sedgwick district court, division No. 1; Thomas E. Elcock, judge. Opinion filed January 9, 1926. Affirmed.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson* and *William H. Hitchcock,* all of Wichita, for the appellant.

*R. R. Vermilion, W. F. Lilleston,* both of Wichita, and *E. T. Miller,* of St. Louis, Mo., for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one to recover damages for delay in transporting wheat from points of origin on the carrier's railroad in Kansas and Oklahoma to Galveston and New Orleans, for export. Delay occurred, and market value of the wheat declined while it was in transit. The court instructed the jury to return a verdict for nominal damages only, and plaintiff appeals.

The wheat was purchased for export, and moved on bills of lading marked "For Export." The bills of lading provided that the grain might be delivered to terminal elevators, and there placed with other grain of the same kind and grade, without respect to ownership, and if so delivered, to be subject to the additional lien of

elevator charges. This course was pursued. The bills also provided that surrender of the original, duly indorsed, was required before delivery. The bills were presented and surrendered, delivery was made on presentation, and the grain was exported.

The general course of dealing in wheat for export, and the course in fact pursued in the present instance—unless with respect to two cars—is this: The dealer for export purchases wheat at inland sources of supply, and accumulates it at port of exportation. His New York broker, in touch with export trade, makes sales to exporters. The contract may require immediate shiploading, or loading within fifteen, or thirty, or sixty days. The dealer endeavors to keep "long" on wheat to the extent of 50,000 to 100,000 bushels. Consequently, he will continually have wheat due him on contracts of purchase but not delivered to carrier, purchased wheat in transit, wheat on track at port, and wheat in warehouse at port. Sometimes he will have large stocks at the ports waiting for vessels to arrive, and sometimes he will be hard pressed for grain to load a vessel. The dealer finances his operations by depositing bills of lading of wheat delivered to carrier with his banker as a basis of credit. When a vessel is to be loaded pursuant to a contract of sale, he instructs the warehouse to load the proper kind and quantity of grain into the vessel, takes up a sufficient number of bills of lading to aggregate that quantity, and surrenders them. There is no local market at Galveston or New Orleans which could absorb the grain shipped there for export, and consequently, no cash market of any importance in determining market value. Plaintiff's proof of market value was based on Chicago quotations.

The petition listed two delayed shipments made by plaintiff, and a number made by Wallingford Brothers, whose claims had been assigned to plaintiff. The bills of lading for these cars were all traced to surrender for the loading of named vessels bound for European ports. No contract of sale was not fulfilled, no difficulty in filling any contract of sale was experienced, because of the carrier's failure to deliver these cars promptly, and there was no evidence that the business of the shippers as dealers in grain for export was detrimentally affected in any manner by the carrier's delinquency.

For present purposes it may be said that an invasion of a legally protected interest imports injury, and injury is redressed by damages. Quantum of damages depends on extent of injury caused by the invasion. If nothing but the invasion appear, the injury is

Craig v. St. Louis-S. F. Rly. Co.

technical, and is compensated by nominal damages. To warrant substantial damages, there must be substantial injury. When substantial injury has been shown, the law concerns itself with expression of the idea of reparation in terms of money. These principles apply to cases of invasion of a shipper's interest in prompt delivery.

A mill engaged in manufacture of flour, and not in the grain trade, takes advantage of abundant supply and low price and buys wheat to fill its warehouses. Some of the deliveries are delayed in transit, and meantime market price declines. The wheat is not needed to operate the mill, it was purchased for storage for future use and not for sale, and is not used until long after delivery, when occasion arises to draw on accumulated stocks. Unless some inconvenience were suffered in respect to receiving the wheat at an unappointed time, delay in transportation caused no injury beyond the purely technical injury recognized in deference to legal theory.

The dressed pigs case, *Ward et al. v. N. Y. Central R. R. Co.*, 47 N. Y. 29, announces a contrary doctrine. In that case, there was delay in delivery and decline in price. Nothing else appeared, and upon these two facts the court held the consignee suffered loss to be measured according to the rule of differences in market value. The principle applied was that the consignee was entitled, on day delivery should have been made, to pigs of the value such pigs were selling for on that day, and by delivery of the same pigs on a later day, when they were of less value, the consignee was deprived of the higher market price. The decision is unsound because of faulty analysis. While it is quite likely the seventy-eight dressed pigs were desired for sale, deprivation of higher market price was pure assumption, and unless the consignee was in fact deprived of the benefit of a sale at the higher price, the market-value rule for calculating damages had no more relevancy to the transaction than a maximum in equity.

To be actionable, delay in making delivery of a car of wheat must cause injury to the shipper. Market prices rise and fall as the result of operation of economic forces, and decline in market value of a car of wheat in course of delayed transportation may occur. If so, the decline is a coincidence and not a consequence of the delay. The delay did not cause the decline, and depreciation in value of the wheat is not an injury resulting from delay in making delivery. Injury to the shipper, if any, must be sought elsewhere. The interest invaded is dominion over personal property. The invasion consists in withholding possession of the car of wheat at the

time and place of delivery. Mere withholding of possession is a technical invasion only, of no more importance than a technical trespass on real estate, the harmless touching of the person, and the like. To warrant recovery of more than nominal damages, the deprivation must cause substantial injury. Leaving out of account change in quality or character affecting identity of the wheat, and expense incurred, occasioned by delay, substantial injury can occur in but one way—by deprivation of use. Gravity of injury depends on the nature of the prevented use. If the shipper desired to merchandise the wheat, the injury caused by withholding possession of it consisted in deprivation of opportunity to sell. In that event, decline in market value comes in merely as indicative of extent of injury. If possession was to be utilized for purpose other than sale, and that use was fulfilled, fluctuation in market value was of no more consequence than change of weather.

The true doctrine is stated in Hutchinson on Carriers:

"Where the goods are not intended for sale in the market of destination, but are intended to serve some specific purpose of the owner, the rule that the carrier will be liable for depreciation in the market value during his negligent delay will, of course, not be applicable; and in the absence of special circumstances which may make the carrier liable for some special loss, or for the expense to which the owner may be put by his negligent delay, he could be held liable only for the inconvenience to which the owner had been put by being deprived of the use of his property during the time of the delay; . . ." (§ 776.)

A recent case applying this doctrine is *Middleton & Co. v. A. C. L. R. R. Co.*, 118 S. C. 351. The syllabus reads:

"Ordinarily, when goods are shipped with expectation and intention of immediate sale on delivery, the measure of damages for negligent delay is the difference between the market price on the day the goods should have been delivered and that on the day of actual delivery; but such measure of damages does not apply where consignee does not expect or intend to sell on delivery, but intends to store the goods for better prices." (¶ 2.)

In this instance, the intended use to be made of every car of grain was stated in the bill of lading. Each bill bore the notation "For Export," and all the grain was exported. The freight rate on grain shipped from the interior to gulf ports for export is lower than the interstate rate. Transportation may not be for export for the purpose of making a rate to the shipper, and after that purpose is accomplished, be for some other purpose in order to bolster up a claim of damages for delay.

The judgment of the district court is affirmed.