[NEW YORK GENERAL TERM, May 2, 1859.   *Roosevelt, Ingraham* and *Pratt*, Justices.]

———————◇———————

JONES *vs.* THE NEW YORK AND ERIE RAIL ROAD COMPANY.

In an action against a rail road company, for negligence in not conveying a quantity of dried apples to market, within a reasonable time, the plaintiff cannot recover as damages the difference between the price of dried apples at the time the property in question should have been delivered, and the price at the time when the property was in fact delivered.

The decision in *Wibert* v. *The New York and Erie Rail Road Company*, (19 *Barb.* 36,) reaffirmed ; and the case of *Kent* v. *The Hudson River Rail Road Company*, (22 *Barb.* 278,) disapproved.

APPEAL from a judgment of the county court, affirming the judgment of a justice of the peace. The plaintiff delivered to the defendants, at Dunkirk, 3146 pounds of dried apples to be transported to the city of New York. He alleged in his complaint that they were to be delivered in New York in four days from 7th December, 1857, and at the price for transportation of 60 cents per 100 pounds. The apples were delivered to the defendants, at Dunkirk, on the 4th, 5th and 7th days of December. They were shipped in two cars which left Dunkirk on the 8th of December. The day the apples were to leave, the plaintiff inquired of a clerk or clerks in the office at Dunkirk, how long it would take to get the apples

to New York, and was answered, three or four days. This was all the evidence tending to show any special contract as to the time of delivery in New York. One of the cars reached New York on the 12th of December, at which time the price of dried apples in the city was eight cents a pound; the other car arrived on the 16th, when the price of dried apples was seven and a half cents, at which price the plaintiff sold the apples. The plaintiff was permitted, though the defendants objected, to prove the decline in the price of apples between the 12th and 16th December, for the purpose of fixing the measure of damages. The plaintiff gave no evidence tending to show the time usually consumed in transporting freight to New York. The defendants proved that the clerks at Dunkirk had no authority to contract for the delivery of freight in any specified time, and that no such contract was made in this case. Also that freight trains ran through from Dunkirk to New York in from three to thirty days. That freight cars go from Dunkirk to Hornellsville, and freight trains are there made up differently, owing to freight coming there on the road from Buffalo; and that cars coupled together are sometimes separated. There was also a question in the case as to the price to be paid for transportation; the plaintiff claiming that he was to pay only 60 cents a hundred pounds. He paid in New York 80 cents. The question is not material on review. At the close of the evidence the plaintiff was permitted to amend his complaint by adding "that there was an implied contract to deliver freight by ordinary care in New York by the 12th, that apples had fallen in New York, and therefore the defendants were liable for the delay."

The justice allowed, as to the apples delivered in New York on the 16th of December, as an item of damages, the difference in the price of the apples on the 12th and 16th days of December. The judgment was affirmed by the county court, and the defendants appealed to this court.

*Warren & Morris,* for the plaintiff.

*O. W. Johnson,* for the defendants.

*By the Court,* MARVIN, J.   Unless it shall be held that there was a special contract in this case to deliver the apples in New York within four days, the case comes within the case of *Wibert* v. *The New York and Erie Rail Road Company,* (19 *Barb.* 36.)   It cannot be claimed that any special agreement was made to deliver the apples in New York at any specified time.   The plaintiff, as he says, went to Dunkirk on the 3d of December, to see what it would cost to take his apples to New York, and was told 60 cents a hundred; and he told the clerks he would bring the apples along and have them there by the 7th of December.   A part of the apples were taken to Dunkirk on the 4th of December, a part on the 5th, and the remainder on the 7th, when the plaintiff took a receipt in the usual form.   He asked how long it would take to get them to New York, and the answer was, as he says, three or four days.   He then went on to New York.   There was no contract to deliver apples in New York in four days.   The plaintiff made the inquiry after the apples were delivered, and the clerk expressed the opinion that they would be in New York in three or four days.

This point in the case may be dismissed.   The case was put, on the argument, mainly upon the *negligence* of the defendants, or an implied contract to deliver within a reasonable time. The justice proceeded upon the ground that if the defendants were negligent, or failed to deliver the apples in New York in a reasonable time, they were liable in damages, and the measure of damages was the difference in the price on the day when they should have been delivered, and the day they were delivered.   The justice and the county court must have followed *Kent* v. *The Hudson River Rail Road Company,* (22 *Barb.* 278,) in which *Wibert* v. *The New York and Erie R. R. Co.* is examined and overruled.   Generally we follow the more

recent decisions, as better evidence of the law; but constituted as the supreme court is, I suggest that magistrates and county courts should, generally, follow the decisions of the judges in their own districts, when there is a conflict of decisions, until the court of last resort shall settle the question.

In *Wibert* v. *The New York and Erie Rail Road Co.*, the precise question raised in this case was presented, and it was carefully examined and considered by the supreme court, at general term, in this district, and although it has been over-ruled in *Kent* v. *The Hudson River R. R. Co.*, we ought to adhere to our decision, unless we are satisfied that we were in error, until the law shall be settled by the court of appeals. I have carefully read the opinion of brother Smith in *Kent's case*, and it has failed to convince me that the court in this district erred in *Wibert's case.*

I might stop here, as I do not know that I can present my views with more clearness now, than they are expressed in the opinion so elaborately reviewed by brother Smith. It seems, however, that I was unsuccessful in my effort to show that certain cases, upon which he very much relies, had no legitimate application to the question we were considering; also that some of my positions and arguments were misapprehended. In *Wibert's case* an elaborate brief had been prepared by the plaintiff's counsel, to sustain the ruling of the referee. Many of these cases, it was conceded, were not in point, unless the principles they established should, by analogy, be applied to the question discussed. In the opinion an attempt was made to present or bring into view all the well settled, general rules relating to damages for the breach of contract or failure to perform a duty imposed by law, which it was claimed or supposed could have any application to the question under consideration. Hence, after showing that the liability of a common carrier for a *tardy* delivery, did not rest upon the same principles as the liability for a total failure to deliver, and showing upon what principles the liability did rest, I proceeded to state the general, well settled, universally recognized rules, relating

to damages, *resulting* from the injury complained of; adding that it is not difficult to understand them, but that the difficulty lies in their application to the thousand varying circumstances and combinations of facts, arising and calling for their application. It is agreed that the damages must always be the *natural and proximate consequence* of the act complained of.

Starting with these general rules, taken from elementary authors, and supported by adjudged cases, I endeavored to show that the decline in the price of the butter was not a *natural consequence* of the injury complained of, viz: the unreasonable delay in delivering the butter. I could see no connection then, nor can I now, between the two things. I then proceeded, hypothetically, to consider that part of the rule which requires that the damage should be a *proximate* consequence of the act complained of; and I endeavored to show that the damages or loss arising from the decline in the price of the butter, was not a *proximate* consequence of the delay in delivering the butter, but that such damages would be *too remote, too contingent, too speculative.* It was remarked that it was difficult to consider this part of the rule, until it could be seen that the fall in the market price of the butter *resulted* from the breach of duty by the defendant. I did, however, proceed to state some of the rules, and refer to some of the cases relating to *proximate* damages; and I extracted some of the language of Nelson, Ch. J., in *Masterton* v. *Mayor of Brooklyn,* (7 *Hill,* 67,) speaking of remote and contingent damages. I did not refer to the case itself as an authority one way or the other, upon the question involved in Wibert's case. Indeed, I did not suppose the case itself had any application to the case then under consideration; but brother Smith has made much use of the case to overthrow my positions and arguments; and although I thought I understood the ground upon which *Masterton* v. *Mayor of Brooklyn* was decided, my respect for brother Smith has caused me to re-examine it, and I shall in the proper place again refer to it.

I will not now repeat my arguments or remarks upon the question as to the *proximity* of the damages—as to those gains and losses that are, in the language of Nelson, J., " too contingent and speculative in their nature, and too dependent upon the fluctuations of the markets and the chances of business, to enter into a safe or reasonable estimate of damages." I will, however, avail myself of the present case as an illustration, and add it to cases supposed in the opinion in *Wibert's ease.* Indeed, I then, in considering the case of contingencies, supposed what has actually happened in this case. A portion of the dried apples were put into one car, and another portion into another car. One of the cars arrived in New York in due time, and there is no complaint as to that. The plaintiff was in New York, and " inquired the price of apples all round the city ; was there for the purpose of learning the market price." When the first car arrived, the price of dried apples was eight cents a pound, and when the other car arrived they were only worth seven and a half cents, and at this price the plaintiff sold his apples. Why did the plaintiff wait from the 12th December, when the first car of apples reached him, until the 16th, when the other car came, without selling the apples that had reached the market ? Why did he not sell those that came on the 12th at eight cents ? How do we know but that he was waiting for a better price ? The case does not tell us when he did sell. He may have waited, for aught we know, a month, and the price may have been fluctuating daily ; and it may have been, at times before he sold, higher than eight cents. He *owned* the apples, and was not obliged to sell, though he may have been offered ten or more cents a pound. The rule against which I contend is arbitrary. It simply looks to the price of the article on the day when the carrier should have delivered it, and the price on the day when it was delivered ; and if there has been a decline in the price, the carrier is to respond in damages precisely the amount of the difference, without any regard to the contingency as to the owner selling on the day of arrival, or any other contin-

Jones *v.* New York and Erie Rail Road Company.

gencies. If there has been an advance in price during the delay, this is the good luck of the owner, that is, if we assume that he would have sold the property on arrival, in case it had come on the day it should have come, we must also assume that he does sell on the day it does arrive, and does not wait for a further advance, until the price declines lower than it had at any previous time been. Thus, innumerable contingencies may be supposed.

In *Wibert's case* a strong argument was made to induce the court to adopt, by analogy, the rule of damages for a breach of contract between vendor and vendee. The court refused to apply such rule, for the reasons stated in the opinion, and to which, without repeating them, I refer.

Before proceeding to the cases upon which Justice Smith relies, and which were remarked upon by me in the opinion in *Wibert's case,* I will refer to a remark of his, showing, as I think, that he has fallen into a serious error as to the character of the rule of damages applicable to the case, though he supposes me to have committed the error. After making several extracts from my opinion, he says: "The theory of damages, as suggested and involved in these extracts from the opinion of the learned judge, is, that the damages properly recoverable in an action, must be the direct and immediate consequence of the injury or breach of duty complained of. The rule of damages thus enunciated belongs to the large class of injuries, direct or immediate, for which, under the old nomenclature, the action of trespass was the appropriate remedy, and practically ignores the large class of consequent injuries, for which trespass on the case or assumpsit was the proper form and manner of the action."

I certainly did not so understand the matter while considering *Wibert's case.* I knew that the action in that case was founded, either upon contract implied by law, and arising out of the duty of a common carrier, or for *negligence* in the performance of that duty; and I stated that the rule would, in the case under consideration, be the same, whether the

action should be regarded as upon contract, or for negligence; and I certainly supposed that the authorities referred to, touching damages, applied to such a case. If, in truth, the authorities and the rules of law to which I had referred, and my argument founded upon them, practically ignored the large class of consequential injuries, for which, formerly, trespass on the case or assumpsit was the proper remedy, then I did commit a very serious blunder. I had referred to 2 *Greenl. Ev.* §§ 253, 254, 256, relating to damages generally; to *Sedg. on Dam. ch.* 3, entitled " Of remote and consequential damages;" *Armstrong* v. *Percy,* (5 *Wend.* 538, 9,) an action of assumpsit; 6 *Hill,* 648, an action of assumpsit; *Sedg. on Dam.* 58, 112, 2*d ed.* The reader can examine the references in the opinion in *Wibert's case,* and the remarks founded upon them, and I think he will not come to the conclusion that the real question was not understood, or that the proper sources of the law were not consulted. The case may have been erroneously decided, but of this I am not yet satisfied.

As to *Masterton* v. *Mayor of Brooklyn,* (7 *Hill,* 67,) so often referred to by brother Smith, it was decided upon the simple principle that when one party to an executory contract puts an end to it, the other party is entitled to an equivalent in damages—the gains and profits he would have realized from a performance of the contract. The case comes directly within the rule requiring that the damages be the natural and proximate consequence of the act complained of. The plaintiffs had contracted to deliver stone at a stipulated price; after delivering a portion of them, the defendant refused further performance of the contract. The natural and proximate consequence of this breach of the contract, by the defendant, was the loss by the plaintiffs of all the profits and gains they would have made by performing the contract. This principle had long been settled, but I was not able to see its application to *Wibert's case.*

It was my intention to remark further upon *Davis* v. *Garrett,* (6 *Bing.* 716,) and *Bracket* v. *McNair,* (14 *John.* 170,)

and *O'Conner* v. *Foster,* (11 *Watts,* 418,) which Justice Smith regards as authorities against the conclusion to which we came in *Wibert's case;* but I do not think I should be able to add any thing very material to what I then said. I endeavored to show that they rested upon their peculiar facts, and upon principles entirely consistent with the views taken in the opinion in *Wibert's case.*

*Smith* v. *Griffith,* (3 *Hill,* 333,) is referred to by Justice Smith. It was the case of the mulberry trees, that were *injured* while in the custody of the carrier, by reason of the long neglect to transport and deliver them. The decision was put upon the ground of the negligent loss or injury of the goods entrusted to the carrier to transport. I do not understand the learned judge in *Kent's case* to claim that this case is in point, except by way of analogy. He also refers to the rule of damages for the breach of executory contracts between vendor and vendee. After making an extract from Judge Nelson's opinion in *Smith* v. *Griffith,* concluding: "Assuming that there is no defect in the quality, the fair test of its value, and consequently of the loss to the owner, is the price at the time in the market." Judge Nelson is here speaking of cases where the goods have been *injured* by the *negligence* of the carrier, and in answer to the offer to prove that some years after the injury, it was demonstrated the mulberry trees were of little or no value. Justice Smith remarks that the case, in its facts and the principles upon which it is decided, is quite in point in opposition to the opinion in *Wibert's case.* This depends upon the question whether the rule which gives damages against a carrier for *injury done to the property,* by his neglect, shall be applied to a case of neglect to deliver in due time, though the goods are in fact delivered in good order. In one case it is *certain* that the owner has sustained damage resulting from the negligence of the carrier. His *injured* goods cannot be as valuable as they would have been, if not injured. In the other case the goods have not been injured. They cannot be sold for as much in market as they could

have been a few days before, or they may be sold for more, or if not for as much, then, by waiting a few days, a better price may be obtained than at any previous time. In one case the damage and loss are certain. There are no contingencies. In the other case numerous contingencies present themselves.

Justice Smith says, the contingency in such cases must be at the risk of the party who is guilty of a breach of contract or a breach of duty. This is the *very point* to be established. Establish it as a rule that in all cases of a breach of contract, or breach of duty, the bailee is to respond in damages to the bailor for any loss he may have sustained, however contingent, and though not contemplated by either party at the time of the bailment, and its consequences will be very sweeping. I borrow or hire my neighbor's horse for a short journey. I over stay the time I was to be absent, a day, and on that day the owner had an opportunity to sell the horse for $500, and would have sold him had he been at home. The opportunity for making the sale is lost, and the owner, a month after, makes the sale at $300, the best price he can get. Am I liable to respond to him in damages to the amount of $200? See numerous cases referred to in *Sedg. on Dam.* ch. 3, entiled "Of remote and consequential damages."

Justice Smith refers to *Scovill* v. *Griffin*, (2 *Kern.* 509,) decided in the court of appeals, after the decision in *Wibert's case;* and he quotes from Justice Edwards' charge to the jury what, undoubtedly, sustained his position. This part of the charge did not come under review in the court of appeals. It stands there simply as the opinion of a respectable judge at the circuit. All that was decided in the court of appeals was, that the omission of a common carrier to transport and deliver property to the consignee within a reasonable time, does not necessarily render him liable for its value. The carrier is liable for the damages caused by such omission; but the owner cannot, on the sole ground of unreasonable delay in the conveyance and delivery of the property, refuse to receive it, and recover against the carrier as for its conversion. The

question we are considering was not before the court of appeals. The case was decided at the June term of the court, in 1855. *Wibert* v. *N. Y. and Erie R. R. Co.* was decided in that court at the March term previous. The question was in that case, though it was not necessary to decide it, and it was expressly reserved. (*See close of Judge Denio's opinion.*) I was a member of the court when these cases were decided, and concurred in both decisions. I certainly did not understand them as affirming the proposition for which Justice Smith contends. The question was presented in *Conger* v. *Hudson River R. R. Co.*, (6 *Duer*, 375,) decided in February, 1857; but the question was not decided, as the case turned upon another question. Judge Woodruff, however, in his opinion, refers to *Wibert* v. *N. Y. and Erie R. R. Co.* with approbation, and expresses his own opinion in accordance with the opinion in *Wibert's case.* Judge Woodruff did not understand that the cases in the court of appeals affected the question, or that the cases upon which Justice Smith relies were applicable.

In conclusion, as I understand the case, the question had not been decided until *Wibert's case ;* and in that it was simply decided that the referee erred in holding that the measure of damages against a common carrier, for a *delay* in delivering the goods, was the difference in the price of the goods in market on the day they should have been delivered and the day they were delivered, in case there had been a decline in price. It was not affirmed that in such a case no damages could be recovered ; nor were any suggestions made as to what damages might be recovered. These questions were left for decision as they should arise. The bailor may, in such a case, undoubtedly recover an idemnity for any *legitimate* damages he has sustained—damages which are the natural and proximate consequence of the breach of the contract or duty—damages that naturally result from the breach, and which are not too remote, speculative or contingent. This may include interest upon the value of the property during

the time the owner was deprived of it; or if it should be property he could use, the value of the use of it. Many special circumstances may exist entitling him to damages, within the principles referred to. The common law has never attempted to compensate for all injuries sustained. It refuses to take into consideration damages remotely resulting from the act complained of. If an attempt were made to follow up, step by step, all the *remote consequences* of acts that may be complained of, and to give redress in damages, the result would be a failure. The rules would become so numerous, complex and uncertain, as to be impracticable. Lord Bacon says: "It were infinite for the law to judge the causes of causes, and their impulsion on one another. Therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." (*Sedg. on Dam.* 57, 58, 2*d* ed.)

The judges composing the court in the seventh and eighth districts differ in opinion, and they will probably adhere to their respective decisions until the question shall be settled by the court of last resort.

The judgment of the county court and that of the justice must be reversed.

[NIAGARA GENERAL TERM, September 12, 1859. *Greene, Marvin* and *Davis,* Justices.]