## Case No. 12,094.

### ROWE v. The CITY OF DUBLIN.

[1 Ben. 46.] [1]

District Court, E. D. New York. April, 1866.

CARRIERS—LOSS BY DELAY IN DELIVERY OF CARGO—NEGLIGENCE—DAMAGES—LOSS OF MARKET BY THE CLOSING OF THE SEASON.

1. Where a case, containing braid, &c., for the manufacture of ladies' hats, was shipped on a steamer, but was not delivered to the consignee for nearly a month, notwithstanding his repeated demand of it, having been sent to a public store as a case without marks, and it appeared that the outside covering, which was properly marked, by some means was removed from the case while in custody of the ship, and the case itself was not marked, but the delivery clerk saw a loose covering on the wharf, and, when the consignee applied for the case, knew that a case had been sent to public store, which he was satisfied was the case applied for, but did not communicate the fact to the consignee. And where during the delay the season for selling the goods to the trade ceased and the goods were thereby diminished in value—*Held*, that on the evidence the delay in the delivery was attributable to negligence on the part of the vessel.

2. On the evidence, it was not negligence to have no marks on the case itself.

3. The vessel was chargeable with the damage occasioned by the delay and the diminution in value was properly chargeable as an item of damage.

[Cited in The Giulio, 34 Fed. 911; The Caledonia, 43 Fed. 686.]

This action was brought to recover damages for undue delay in delivering a case of merchandise shipped in the steamer City of Dublin, consigned to the libellant [Edward Rowe]. The steamer arrived in this port on the 17th of September, and proceeded at once to discharge. The case in question, however, was not delivered with the rest of the cargo, and, on application of the consignee, was reported not to be on board. As the manifest showed that it had been actually shipped, it was supposed to have been misdelivered, and repeated applications were made on behalf of the consignee to the agents of the vessel to find and deliver it. After considerable delay, the consignee was informed that a case, supposed to be the one in question, was at a public store, where it had been sent by the discharging clerk, as a case without marks. Finally, about the 14th of October, the consignee was informed by the agents of the vessel that the case was at the bonded warehouse, No. 16 Washington street, and he was invited to examine and identify it, that it might be delivered, if it proved to be his case. The case was identified on the same day, and on the same day transferred to the appraiser's office, and, after the usual delay there, it was finally received at libellant's warehouse on the 20th of October, in like good order as it was when shipped, save only that its canvas covering was gone and it was consequently without marks. Had the case been delivered

in the ordinary manner, it would have been received at the warehouse by the 27th or 29th of September. The libellant proved that the case contained braid, composed mostly of gold tinsel, designed for the manufacture of ladies' hats, and that it was imported by him to be sold at wholesale to the trade; that no change in the value of the article arose till the 5th of October, when its value was diminished over fifty per cent., by reason of the fact that the season for disposing of the article to the trade then ended; and this diminution of value he sought to recover as damages.

G. M. Speir, for libellant, after arguing the disputed questions of fact as to the delivery of the box, proceeded to argue:

(1.) Prima facie, the ship having signed the bill of lading, containing marks of identification, the onus, at least, was on the ship to show that in some way the consignor or owner was at fault. There was no concealment, as in the case of goods injured or falling off in quantity, where the shipper cannot know the contents. In Clark v. Barnwell, 12 How. [53 U. S.] 272, Nelson, J., says, that when a bill of lading contains the usual clause, "shipped in good order," and adds, "contents unknown," the acknowledgment of the master as to the condition of the goods when received on board, extends to the external condition of the cases, excluding any implication as to the quantity or quality of the article, &c. See, also, Shaw, C. J., in Hastings v. Pepper, 11 Pick. 43, to the same effect. These authorities bind the ship, by the bill of lading, to the fair external condition of the box or case containing the goods. The bill of lading would be proof of delivery by the ship in both cases, and in order to escape responsibility, in the one case it would be necessary to show that she never received the goods, and in the other that she never detained them. See Bishop v. Mersey & C. Nav. Co., cited in Pritch. Adm. Dig. A Scotch case.

(2.) The respondent is clearly liable for damages for the detention of the goods, provided the law gives the libellant a claim against a carrier for mere detention by reason of the goods depreciating in value while thus detained. The general term of the supreme court of the Seventh district in this state, held that the carrier is not entitled to damages for depreciation in the value of the goods for mere detention (Jones v. New York & E. R. Co., 29 Barb. 633, opinion by Marvin, J.,), while the general term of the supreme court in the Sixth district hold that such damages are recoverable (Kent v. Hudson River R. R., 22 Barb. 278, opinion by E. D. Smith, J.). The only case I can find upon this precise point is in Wilson v. Lancashire & Y. Ry. Co., 9 C. B. (N. S.) 632, cited in 99 E. C. L. 631. In that case, all the judges concur in the rule, that the plaintiff was not entitled to such profits, as he might have

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

made upon receiving the cloth in due season, by reason of remoteness, but they all agree that deterioration in quality may be taken into account in estimating damages, also diminution of quantity, and they see no reason why a loss in the exchangeable value of the goods should not be taken into the account. In the opinion of Williams, J., the case before this court is put by hypothesis, and it is not possible to conceive of a case more in point. It is to be observed that all the judges in this last English case have adopted the rule laid down in Hadley v. Baxendale, 9 Exch. 341, and that the only additional adjudication we have had on this subject, so far as I have been able to ascertain, is found in Hamilton v. McPherson, 28 N. Y. 72, where Judge Selden, at page 77, adopts the rule as laid down in Hadley v. Baxendale. Although this case decided by Judge Selden, certainly one of our ablest judges. is not decisive of the point in question, it shows a concurrence with the rule adopted in England, and leads us to believe that that rule will yet be. adopted by our court of last resort in this state. There are many reasons why the commercial community should be indemnified for such loss. Among them I may mention the importance of the prompt execution of orders to meet a fluctuating market, where competition constitutes the very life of trade and success; the many expeditious modes of conveyance among common carriers, and the readiness of merchants who employ them, to pay the highest price to secure goods or any merchandise, on foreign orders, by the quickest dispatch. The carrier, therefore, whether by rail or vessel, will receive the greatest patronage who discharges his plain duty in these respects with the greatest fidelity. It is, then, but common justice, that any damage sustained by any faulty negligence in the performance of this duty should be made good to any one who may sustain a loss thereby.

J. W. Gerard, Jr., for respondents, after arguing that the failure to mark the case itself, was the cause of the whole delay, proceeded:

(1.) It is a well settled rule that where the law creates a duty or charge, and the party is disabled from performing it, and has no remedy over, then the law will excuse him. The cases state that the duty of a carrier to carry and deliver safely is absolute, but to deliver within a reasonable time is merely relative, and dependent upon the circumstances of the case. The principle upon which the extraordinary responsibility of common carriers is founded, does not require that that responsibility should be extended to time. Harmony v. Bingham, 12 N. Y. 99. When the goods are actually delivered, and no time of delivery has been specified, carriers may excuse delay in delivery by accident or misfortune, although not inevitable or by the act of God.

Parsons v. Hardy, 14 Wend. 215; Wibert v. New York & E. R. Co., 12 N. Y. 245; Blackstock v. New York & E. R. Co., 1 Bosw. 77; Dows v. Cobb, 12 Barb. 310. The discrepancy of opinion on the question of damages for delay, alluded to by libellant's counsel, has been set at rest by the court of appeals in the case of Wibert v. New York & E. R. Co., 12 N. Y. 245. The English case quoted by him from 9 C. B. (N. S.) 632, whatever its merits, is of no authority here, and in that case there was a delivery at the wrong place, and a violation of the substance of the contract and instructions. The carrier, the owner not being found, should properly place the goods in store, as was done in this case. Fisk v. Newton, 1 Denio, 45.

(2.) Damages, which are the natural though not the necessary result of the injury, are termed special damages and must be averred in the complaint. Vanderslice v. Newton, 4 Comst. [4 N. Y.] 133; Bogert v. Burkhalter, 2 Barb. 525; Solms v. Lias, 16 Abb. Prac. 311. Here the goods were not injured, but there was a change of fashion, not a necessary result of any action of the vessel, but an outside caprice. If not stated in the complaint, the plaintiff cannot prove such special damages on the trial. Low v. Archer, 12 N. Y. 282; Molony v. Dows, 15 How. Prac. 265. Therefore, no special damages can be recovered here because not averred, and no other damage because there was none. The court, if they should find liability, should state for what period the damages should be assessed, as the delay was not in any event all the result of the action of the respondents, but of the libellant's clerks, who by the testimony appear to have been dilatory. Whether the libellants and their employees were dilatory at the first or last part of the month makes no difference, as the sooner steps had been initiated, the sooner the recovery of the box would have been had and ended.

(3.) Possible or probable profits are not to be estimated on the question of damages. It would be a calculation upon conjectures and not upon facts. The subject would be utterly uncertain, and a uniform interest has been allowed in its place. Speculative profits, or accidental or consequential losses cannot be estimated as damages. Hamilton v. McPherson, 28 N. Y. 72. The fashion of gold tinsel stuff or its decline was not contemplated by the contract of carriage.

(4.) The loss by the decline in prices was not a proximate consequence of the delay. Nothing can be allowed as legal damages, that is not the natural and proximate consequence of the act complained of, particularly as there was no time fixed for the delivery, and it was not a part of the contract. So held in the leading case on the point,—Wibert v. New York & E. R. Co., 19 Barb. 36, 48, which was a case for the detention of butter, held that parties could not recover for an enhanced price. See, also, Jones v. New York & E. R. Co., 29 Barb. 633.

BENEDICT, District Judge. Upon the facts in this case, the libellant insists that the delay in the delivery of the package, was caused by the neglect of the carrier; while the respondents insist that the delay arose in the first instance, from the neglect of the freighter, in not having marks put upon the box itself as well as upon the covering, in which case it would have been delivered instead of having been sent to public store; and that as soon as the case was known to be missing, it was traced and delivered without undue delay or neglect on the part of the vessel. The proofs introduced by the respective parties, lead me to the conclusion that the delay in the delivery of this case must be held to have arisen from the neglect of the carrier. The case, as the bill of lading shows, was plainly marked upon its covering when it was shipped, and it was also described by measurement. Cases of this kind, the dock agent of the vessel thinks, are usually marked upon the box as well as upon the covering, but the weight of evidence is that marking the covering is the more usual and a proper method of marking such merchandise. There is no evidence that the covering was insufficient for the ordinary wear and tear of such a voyage, and no evidence going to show how it came to be removed, as it was while in custody of the vessel. It does appear in evidence, that while the vessel was being discharged, a loose covering was seen by the delivery clerk on the dock, lying about the vessel, but no examination was made of it to ascertain what marks it bore; and it also appears that the case in question was the only case of merchandise found to be without marks. An examination of the loose covering would doubtless have insured a delivery of this case with the rest of the cargo. Furthermore, the delivery clerk of the steamer says that the returns of the discharge of the vessel, made to him three or four days after her arrival, disclosed to him the fact that a case of merchandise had been sent to the public store as without marks, and that when application was made on behalf of the libellant for the case in question, he was satisfied that it was the one returned as sent to the public store. This, on the clerk's own statement, was within seven days after the arrival of the vessel, and yet he did not inform the libellant of the whereabouts of his case until some ten or twelve days after that. It seems to me that the interests of both merchants and ship owners require greater attention to missing cargo than is here shown. The evidence is that the case could have been found, examined and identified, and delivered within a day or two by prompt attention, and such attention the ship owner was bound to give. Upon this branch of the case my conclusion, therefore, is, that there was such neglect on the part of the carrier in regard to this shipment as to make the vessel responsible for any damages caused by the undue delay. This conclusion in no way conflicts with the doctrine laid down by the New York court of appeals, in the case relied upon by the respondents. Wibert v. New York & E. R. Co., 12 N. Y. 245. That was a case of failure to transport within the ordinary time of running a freight train, and the cause of the delay was that the amount of merchandise offering for transportation at the time, was beyond the capacity of the road to transport as fast as received, and the court held that the carrier having provided all the trains that could with safety be run upon the road, and having used all possible exertion to forward the merchandise, was not chargeable with neglect. Here the delay did not arise in the course of the transportation. That was duly accomplished. But after the merchandise had arrived at the place of delivery, and when there remained upon the carrier only the obligation to land and deliver, and when ordinary care on the part of the carrier would have insured the successful performance of his contract, the merchandise was sent to public store and allowed to remain there some twenty days before notice of its whereabouts was given to the consignee. No law laid down by the court of appeals in the case cited by the respondent would serve to excuse the carrier in a case like the present.

There remains the question whether it has been made to appear by the libellant that he has sustained any loss which can be recovered as damages caused by the undue delay. The respondent insists that the loss in value occasioned by the closing of the season, if proved, is remote and cannot be recovered as a damage caused by the failure of the carrier to deliver promptly, and to sustain this view the opinion of the supreme court of the state of New York in the case of Jones v. New York & E. R. Co., 29 Barb. 633, is cited, while in support of his demand the libellant cites the opinion of the supreme court of New York in the case of Kent v. Hudson River R. Co., 22 Barb. 288. I do not consider it necessary, however, in the present posture of this cause. to pass upon the question which was raised and decided in these two conflicting cases, and which was also passed upon by the learned Judge Betts, in the case of the Lexington, where, in a similar action, the district court of the United States gave a decree for the difference in the market price of some seed which had been stored by a carrier without notice of arrival to the consignee, and so not received until a delay of some days had arisen from what the court, in that case, held to be a neglect of the carrier, for the evidence offered here presents a different question. The libellant in this case has not attempted to prove any variation of that market price proved in the cases above referred to, which would be dependent upon the quantity of the article in the market, the prospect of the crops, the price of gold, possibly even upon the changing phases of political and national questions, and various other contin-

gencies which in a commercial centre go to change from day to day the selling price of many, if not most commodities. His proof here does not show that there was any such change of market price of the article in question during the period of detention; but he proves that when the season ended, and not before, there was a diminution of value of over fifty per cent., the natural and ordinary trade in the article having ceased when the season terminated. In the cases above referred to, the market value of the butter, sheep, and seed in controversy there upon the day of arrival, was dependent upon many contingencies which do not present themselves in the present case. In those cases, the market value proved might have been affected by the arrival or non-arrival of the very parcels in question, the price might have gone up in spite of the delay, and so the detention been productive of benefit instead of loss to the freighter. In this case no possible advantage could accrue to the libellant by the delay. The arrival or non-arrival of this merchandise would not prevent the termination of the season, and with it the end of that demand of the trade, to supply which the article was imported. What the libellant claims here is, not a loss of profit, but that he lost the opportunity to dispose of his goods at all in the manner and for the purposes for which they were imported. The only circumstance which caused this loss was the lapse of time, extending beyond the season. Up to October 5 there was no diminution of value. After that, the article had no exchangeable value in the ordinary course of trade, as an article required for the manufacture of ladies' hats, but was only valuable as an article to be held over to the next season, or to await the chance of finding an out-of-season customer. This diminution of value was a certain result of such delay in regard to an article like this; and I can discover no element mingled with the delay as a cause of the loss. It arose from the delay, and from nothing else, and was its natural and immediate result. A case very like the present is reported in 99 E. C. L. p. 641 (Wilson v. Lancashire & Y. R. Co., 9 C. B. (N. S.) 632). There the action was for undue delay in delivering a quantity of cloth, ordered by a manufacturer of caps, which failed to arrive in time to be made up so as to fill the orders of the season which his travellers had obtained; and the court, while they disallowed all profit which would have arisen from the sale of the caps had they been made, allowed to the plaintiff the diminution of exchangeable value of the cloth caused by failure to arrive in time to be made up for the season. The case put by Williams, J., of an order of ribbons intended to be sold at a fashionable watering place, which should be delayed until the watering season was over, so that the opportunity of their sale is lost, and as their novelty and fashion are gone, they remain on hand materially diminished in value, seems to be on all fours with the case presented by the libellant. The case before me, therefore, as it now stands, I consider to be free from the objections raised by the respondents, and to disclose a positive loss to this libellant, which can be recovered in an action like the present, as the immediate result of the carrier's neglect. The decree must be for the libellant, with an order of reference to ascertain the amount of damage sustained. I do not consider that either party is concluded by the evidence given on the hearing, from introducing before the commission any evidence pertinent to the question of damages, and intend now to do nothing more than declare the rule of damages applicable to the evidence produced before me.