184  245
184  251

## S. M. Willock v. The Crescent Oil Company, Limited, Appellant.

*Contract—Sale—Breach of contract—Measure of damages.*

Defendant agreed to furnish plaintiff, an oil refiner, with all the crude oil that the latter might "need or use" at his refinery during one year between certain specified dates. The plaintiff was permitted to order the oil in lots not exceeding twenty thousand barrels at one time, but such orders were in no case to be made oftener than once in thirty days. It was also agreed that the contract might be extended for an additional year upon the same terms, if plaintiff gave due notice before the first year had fully expired. The oil was to be paid for at the current price. Two weeks before the year closed and, at a time when plaintiff had on hand more oil than he had used during the whole year, he ordered twenty thousand barrels more, which was refused by defendant, on the ground that it could not be "needed or used" during the year. Five days before the close of the year plaintiff elected to continue the contract, and a few days later gave another order for twenty thousand barrels, which was also refused. The evidence showed that the stock on hand at the end of the year was insufficient to supply the needs of the refinery during the second year, and plaintiff was compelled from time to time to buy eighty-six hundred barrels, in addition, from the defendant, at a somewhat advanced price. *Held,* (1) that defendant had a right to refuse to fill the first order for the reason given by him; (2) that as plaintiff had a right to secure his entire stock for the second year as soon as could be done under the contract, defendant had no right to refuse to fill the second order, in so far as such order was necessary to complete plaintiff's stock for the second year; (3) that plaintiff was entitled to recover the difference between the price of the eighty-six hundred barrels, at the time when the second order was given, and the price he was subsequently compelled to pay defendant.

Argued Nov. 4, 1897. Appeal, No. 164, Oct. T., 1897, by defendant, from order of C. P. No. 1, Allegheny Co., Sept. T., 1894, No. 234, overruling exceptions to report of referee. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to report of referee, James S. Young, Esq.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to report of referee.

*J. McF. Carpenter*, with him *S. D. Mitchell*, for appellant.— The measure of damages is the difference between the contract price and the market price, at the date of the breach : Kountz v. Kirkpatrick, 72 Pa. 376.

It was the duty of plaintiff on August 31, 1893, to purchase the oil, if he needed it, at the then market rate, and not enhance the damage, if any, by delaying until April 4, 1894, when the market price of oil had advanced $24\frac{1}{2}$ cents per barrel: Speyer v. Colgate, 67 Barb. 192 ; Pa. R. R. v. Plank Road Co., 71 Pa. 350 ; McHose v. Fulmer, 73 Pa. 365 ; Shepherd v. Hampton, 3 Wheaton, 200 ; Shreve v. Brereton, 51 Pa. 175 ; Union Oil Co.'s App., 3 Penny. 504 ; Keeler v. Schmertz, 46 Pa. 135 ; Pinkus v. Hamaker, 11 S. & R. 200 ; Henry v. Raiman, 25 Pa. 354 ; Williams v. Bentley, 27 Pa. 294 ; Bear v. Harnish, 3 Brewster, 113.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellee.—A defendant in a suit is not entitled to set off against the plaintiff damages for breach of contract between them, unless such breach was complete at the time of suit brought. A mere notice of an intended breach of contract is not of itself a breach of the contract, though it may become such, if accepted and acted on by the other party. A notice of an intention not to perform a contract, if not accepted by the other party as a present breach, remains only a matter of intention, and may be withdrawn at any time before the performance is in fact due : Zuck & Henry v. McClure & Co., 98 Pa. 541.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1898 :

The defendant was a dealer in crude petroleum. The plaintiff was a refiner with a refinery known as the Waverly Oil Works, located in Pittsburg, Pa. On August 13, 1892, they entered into an agreement in writing with each other by the terms of which the plaintiff agreed to buy from the defendant " all the crude oil

that I may need or use at the Waverly Oil Works near Fifty-fourth street, Pittsburg, Pa. during the coming year, that is, from August 13, 1892, until August 13, 1893."

The defendant company agreed to sell him the oil that he might need or use at his refinery during the year at the current price in Oil City, and deliver it at the plaintiff's refinery for 12½ cents per barrel pipeage. The plaintiff was permitted to order the oil in lots not exceeding 20,000 barrels at one time, but such orders were in no case to be made oftener than once in thirty days. The defendant further agreed to hold the oil, so ordered, in its pipe line for thirty days after the date of the order without charge for storage, but after the expiration of this time the oil was to be subject, if left in the lines, to the usual storage charges. It was also agreed that the contract might be extended for one more year upon the same terms, if Willock gave written notice to the company of his wish to extend it, before the first year had fully expired. This was a contract for the supply of the plaintiff's refinery with crude oil in any amount that "he might need or use" for refining during one year from August 13, 1892, not exceeding 20,000 barrels per month. It was not a contract to supply the plaintiff with crude oil for any other purpose than the refining done by him at the Waverly Oil Works; nor for any other time than one year between August 13, 1892, and August 13, 1893. But during the year the defendant was bound to supply the plaintiff with the crude oil of the variety known as "the Washington District Crude Oil" which he might "need or use" at his refinery. In the first eleven months of the year Willock ordered and the defendant furnished 127,833 barrels of crude oil. He had used, when the year was closing, but 59,472 barrels, and had on hand 68,410 barrels of crude oil waiting to be refined. While this was the state of things at the refinery the plaintiff, two weeks before the year closed, ordered 20,000 barrels more of crude oil. This order was refused on the ground that it could neither be "needed or used" during the year, as more than one half of all the oil delivered during the year was still on hand, and the year was just closing. Nine days later, or on August 8, 1893, Willock elected to continue the contract for another year, and gave notice in writing to that effect. A few days later he gave another order for 20,000 barrels of oil

which was also refused upon the same grounds with the order of July 31 previous. This action is brought to recover damages for the refusal to fill the orders of July 31, 1893, and August 30, 1893, for 20,000 barrels each.

The learned judge of the court below was right in holding that the original contract was for one year, and was to be so considered in determining the right of the plaintiff to have his order of July 31, 1893, honored by the defendant. He did not "need or use" any portion of the oil covered by that order at his refinery during the year and, for that reason, had no right to insist on its delivery to him. The contract gave him no right to order it, and imposed no obligation on the defendant to furnish it, unless it could be "needed or used" at the Waverly Oil Works before the expiration of the year. This is not pretended, and this item in the plaintiff's claim will require no further consideration. But as we have seen, the plaintiff had the right to renew or extend the contract over one more year upon the same terms and conditions, by giving a written notice of his desire to do so. This notice he gave five days before the year closed. He still had more oil on hand than he had refined during the first year of the contract; but a few days after the notice of renewal he again ordered 20,000 barrels of crude oil from the defendant. Had he the right to do so? He had a right to a year's supply for his refinery, and he had a right to order what he expected to "need or use" at such time in the year as he thought prudent, in view of the condition of the oil market and its apparent tendency. If the market was falling it might seem wise to order no faster than he actually needed the oil for immediate refining. If it was rising it would be good business management to put in his entire year's stock as soon as it could be done. Which course should be taken was for the plaintiff to determine. The defendant was to supply the oil in quantities not exceeding 20,000 barrels at one time, and not oftener than once in thirty days, until the plaintiff was supplied with all the oil he should need or use during the year. The defendant, by refusing to fill the order of August 30, 1893, assumed that the plaintiff would need or use no more crude oil at his refinery during the year than he had in stock at that time. To what extent the plaintiff was injured by the refusal of the defendant company, if he was injured at all, must depend there-

fore on whether the event justified the assumption on which
the refusal was based, that he was already supplied with a stock
of crude oil that would last for the balance of the year. If he
should need no more oil for refining than had already been fur-
nished him he would have no right to complain, since the obli-
gation of the defendant would have been already discharged
and his contract fulfilled; but if the stock on hand proved in-
sufficient for the needs of his refinery during the year, to the
extent of such insufficiency the order should have been filled,
and to that extent, together with the added costs of securing
the amount needed, the plaintiff has a good cause of action.
The learned master finds the fact to be that the stock on hand
on August 30, 1893, was insufficient to supply the needs of the
refinery during the second year's operation, and that it became
necessary for the plaintiff to buy $8,624\frac{79}{100}$ barrels of crude oil
in addition, and at a somewhat advanced price. From this fact
the learned master drew a correct legal conclusion when he held
that the oil company, having undertaken to furnish the year's
supply of crude oil, was bound to reimburse the plaintiff for the
increased cost of the supply that he was compelled to buy out-
side of the contract. This increased cost furnishes the true
measure of damages in this case. The plaintiff had the right
to have the oil at the price which it bore on August 30, 1893,
the date of his order. He was compelled to pay for it what the
defendant company charged him when it furnished him the
additional oil needed. The difference was his actual loss.
When this difference is restored he has been fully compensated
for his loss by the refusal of the company to fully perform its
contract. In this class of cases damages are given by way of
compensation: Eckel v. Murphey, 15 Pa. 495; Forsyth v.
Palmer, 14 Pa. 96. Sedgwick states the rule applicable to cases
arising from the failure of the seller to perform his agreement
thus, in his treatise on the Measure of Damages, page 260: "It
seems to be well settled both in England and the United States
that the measure of damages is the difference between the con-
tract price and the market value of the article when it should
have been delivered; upon the ground that this is the plaintiff's
real loss, and that with this sum he can go into the market and
supply himself with the same article from another vendor." In
this case the plaintiff did not go into the market and supply

himself from another vendor. He had no access, on account of the manner in which crude oil is stored and transported to the general market. His refinery was connected with the defendant's system of transportation and storage, and when the need to use additional oil came he bought it of the defendant by whom he was required to pay the then current prices for both the oil and pipage upon it. His loss is determined therefore by the difference between what he finally paid the defendant for the additional oil required by him to meet the needs of his refinery during the second year, and the price under the contract at the time the order was made and refused. True, the plaintiff might have gone into the market and bought the needed oil and charged up his loss as damages, but he did not. On the other hand he waited to see if he would need more oil than he already had. When he found that he would, he bought of the defendant so much, and at such times as his business required, and paid such price as was demanded. His loss is thus capable of exact ascertainment. The controversy over the question whether the breach of the contract was at one date or another becomes unimportant in this view of the case, so far as fixing the price of the oil with which the plaintiff might have supplied himself at the cost of the defendant. He did not buy at either of the dates set out. He bought when he came to need the oil, and what he paid is involved in no uncertainty. The defendant must return what he received more than the plaintiff should have been required to pay under the contract, with interest thereon. The assignments of error relating to the measure of damages are sustained.

The judgment is reversed and a venire facias de novo is awarded.